DAVIS POLK & WARDWELL LLP
450 Lexington Ave
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Timothy Graulich, Esq.
James I. McClammy, Esq.
Angela M. Libby, Esq.

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------X
                          :
                          :
**In re**                    :
**CRYPTOPIA LIMITED (IN LIQUIDATION)**  :    **Chapter 15**
    **Debtor in a foreign proceeding.**  :    **Case No. 19-_____ (____)**
                          :
                          :
-----------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECOGNITION AND EMERGENCY MOTION FOR PROVISIONAL RELIEF

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................1

RELIEF REQUESTED....................................................................................4

JURISDICTION AND VENUE .......................................................................5

BACKGROUND ............................................................................................6

A.    The Debtor .........................................................................................6

B.    Cryptopia Data and Contract Dispute ................................................9

C.    The Debtor's Business Operations....................................................11

D.    Liquidation Activities ......................................................................11

BASIS FOR RELIEF REQUESTED ..............................................................12

A.    The Debtor Is Eligible for Chapter 15 Relief....................................12

    1.    The Debtor Meets General Eligibility Requirements of Section 109(a) of the Bankruptcy Code ...............................................................................13

    2.    The Debtor Meets Specific Eligibility Requirements of Section 1517(a) of the Bankruptcy Code ..............................................................................14

        (a)    The New Zealand Liquidation Is a Foreign Proceeding Within the Meaning of Section 1502 of the Bankruptcy Code.........................................14

            (i)    The New Zealand Liquidation Is a Proceeding...................................15

            (ii)    The New Zealand Liquidation Is Judicial or Administrative in Character ....................................................................16

            (iii)    The New Zealand Liquidation Is Collective in Nature .......................18

            (iv)    The New Zealand Liquidation Is Located in a Foreign Country .........19

            (v)    The New Zealand Liquidation Is Authorized or Conducted Under a Law Related to Insolvency or the Adjustment of Debts ........19

            (vi)    Under the New Zealand Liquidation, the Debtor's Assets and Affairs Are Subject to the Control or Supervision of a Foreign Court ........................................................................20

            (vii)    The New Zealand Liquidation Is for the Purpose of Reorganization or Liquidation of the Debtor......................................21

        (b)    The New Zealand Liquidation Is a "Foreign Main Proceeding" ...................21

i

(c)    The Chapter 15 Case Has Been Commenced by a Duly Authorized
Foreign Representative ........................................................................................24

3.    The Petition for Recognition Meets the Requirements of Section 1515 of the
Bankruptcy Code and Bankruptcy Rule 1007(a)(4) ....................................26

4.    The Relief Requested Is Consistent with United States Public Policy and
Policy Behind the Bankruptcy Code....................................................................27

B.    Provisional Relief Within the Scope of Section 1519 of the Bankruptcy Code Is
Urgently Necessary and Appropriate Under the Circumstances ......................................29

1.    There Is a Substantial Likelihood of Recognition of the New Zealand
Liquidation as a Foreign Main Proceeding ..................................................32

2.    Cryptopia Will Suffer Irreparable Harm Absent Provisional Relief ..........................32

3.    The Balance of Equities and Public Interest Favor Granting Provisional Relief ........34

C.    Applying Section 365 Upon Recognition, Pursuant to Section 1521, Is Necessary
and Appropriate .............................................................................................................35

D.    Entrustment for Distribution to Cryptopia Account Holders Upon Recognition,
Pursuant to Section 1521, Is Proper ..............................................................................37

1.    Just Treatment of All Holders of Claims Against or Interests in the Debtor's
Property.........................................................................................................40

2.    Protection of Claim Holders in the United States Against Prejudice and
Inconvenience in the Processing of Claims in the New Zealand Liquidation ............40

3.    Distribution of Proceeds Substantially in Accordance with the Bankruptcy
Code .............................................................................................................41

4.    The General Balancing Test Weighs in Favor of Granting Relief.............................42

NOTICE...................................................................................................................................43

NO PRIOR REQUEST ...........................................................................................................43

## TABLE OF AUTHORITIES

### Case(s)

Page(s)

*In re ABC Learning Centres Ltd.*,
　445 B.R. 318 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) ....................18, 21, 28

*In re ABC Learning Centres Ltd.*,
　728 F.3d 301 (3d Cir. 2013) .................................................................................................28

*In re AJW Offshore, Ltd.*,
　488 B.R. 551 (Bankr. E.D.N.Y. 2013) ................................................................................39

*In re Ashapura Minechem Ltd.*,
　480 B.R. 129 (S.D.N.Y. 2012) ............................................................................................27

*In re Atlas Shipping A/S*,
　404 B.R. 726 (Bankr. S.D.N.Y. 2009)............................................................................39, 42

*In re Avanti Commc'ns Grp. plc*,
　582 B.R. 603 (Bankr. S.D.N.Y. 2018)............................................................................13, 38

*In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*,
　91 B.R. 661 (Bankr. S.D.N.Y. 1988)....................................................................................34

*In re Bd. of Dirs. of Telecom Arg., S.A.*,
　528 F.3d 162 (2d Cir. 2008) ................................................................................................40

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
　374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) .............22, 24, 27

*In re Berau Capital Res. Pte. Ltd.*,
　540 B.R. 80 (Bankr. S.D.N.Y. 2015)....................................................................................13

*In re Betcorp Ltd.*,
　400 B.R. 266 (Bankr. D. Nev. 2009) ........................................................................15, 16, 23

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*,
　482 B.R. 96 (Bankr. S.D.N.Y. 2012)....................................................................................39

*In re Culmer*,
　25 B.R. 621 (Bankr. S.D.N.Y. 1982)....................................................................................40

*In re Barnet*,
　737 F.3d 238 (2d Cir. 2013) ................................................................................................13

*In re ENNIA Caribe Holding N.V.*,
　594 B.R. 631 (Bankr. S.D.N.Y. 2018)............................................................................18, 20

*In re ENNIA Caribe Holding N.V.*,
  596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019).............................................................39

*In re Fairfield Sentry Ltd.*,
  714 F.3d 127 (2d Cir. 2013) ...............................................................21, 22, 23

*In re Glob. Ocean Carriers Ltd.*,
  251 B.R. 31 (Bankr. D. Del. 2000).......................................................................13

*In re Grant Forest Prods., Inc.*,
  440 B.R. 616 (Bankr. D. Del. 2010).....................................................................42

*In re Ionica Pub. Ltd. Co.*,
  241 B.R. 829 (Bankr. S.D.N.Y. 1999)...................................................................41

*In re Lehman Bros. Holdings Inc.*,
  553 B.R. 476 (Bankr. S.D.N.Y. 2016)...................................................................37

*In re Lines*,
  81 B.R. 267 (Bankr. S.D.N.Y. 1988)....................................................................34

*In re Manley Toys Ltd.*,
  580 B.R. 632 (Bankr. D.N.J. 2018), *aff'd*, 597 B.R. 578 (D.N.J. 2019) .................23

*In re Metcalfe & Mansfield Alt. Invs.* ,
  421 B.R. 685 (Bankr. S.D.N.Y. 2010)...................................................................28

*In re OAS S.A.*,
  No. 15-10937 (SMB) (Bankr. S.D.N.Y. July 13, 2015) ........................................28

*In re Ocean Rig UDW Inc.*,
  570 B.R. 687 (Bankr. S.D.N.Y. 2017)........................................................6, 13, 22

*In re Octaviar Admin. Pty Ltd.*,
  511 B.R. 361 (Bankr. S.D.N.Y. 2014)..........................................................6, 13

*In re Qimonda AG Bankr. Litig.*,
  433 B.R. 547 (E.D. Va. 2010) ..............................................................................39

*In re Penn Traffic Co.*,
  524 F.3d 373 (2d Cir. 2008) ................................................................................36

*In re Probulk Inc.*,
  407 B.R. 56 (Bankr. S.D.N.Y. 2009).....................................................................33

*In re Suntech Power Holdings Co.*,
  520 B.R. 399 (Bankr. S.D.N.Y. 2014)...........................................................6, 22

*In re Treco*,
  240 F.3d 148 (2d Cir. 2001) ................................................................................40

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ...........................................................................34

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..........................................................................................32

*In re Yukos Oil Co.*,
    321 B.R. 396 (Bankr. S.D. Tex. 2005) .........................................................13

<u>STATUTES & RULES</u>

11 U.S.C. § 101(23) ............................................................................................15

11 U.S.C. § 101(24) ............................................................................................25

11 U.S.C. § 103(a) ..............................................................................................13

11 U.S.C. § 105(a) .........................................................................................11, 13

11 U.S.C. § 109(a) ..............................................................................................13

11 U.S.C. § 365(e)(1) ..........................................................................................37

11 U.S.C. § 1501 ...........................................................................................34, 42

11 U.S.C. § 1501(a) ............................................................................................29

11 U.S.C. § 1501(a)(1)-(5) ..................................................................................35

11 U.S.C. § 1504 ................................................................................................27

11 U.S.C. § 1509(a) ............................................................................................27

11 U.S.C. § 1515 ................................................................................................27

11 U.S.C. § 1516(c) ............................................................................................22

11 U.S.C. § 1517 ................................................................................................14

11 U.S.C. § 1517(a) ............................................................................................30

11 U.S.C. § 1520(a)(1) ...................................................................................30, 32

11 U.S.C. § 1521(a) .....................................................................................36, 38, 39

11 U.S.C. § 1521(a)(7) .................................................................................31, 38

11 U.S.C. § 1522(a) ..................................................................................................................38

Fed. R. Bankr. P. 2002(q) .......................................................................................................30

<u>OTHER AUTHORITIES</u>

3 *Collier International Business Insolvency Guide* ......................................................................18

8 Richard Levin & Henry J. Sommer *Collier on Bankruptcy* (16th ed.) ...............................20, 21

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

David Ian Ruscoe (the "**Foreign Representative**") is one of two liquidators [1] (the "**Liquidators**") and the duly appointed foreign representative of Cryptopia Limited ("**Cryptopia**," the "**Company**," or the "**Debtor**"), a limited liability company incorporated under the laws of New Zealand, in Cryptopia's liquidation proceeding (the "**New Zealand Liquidation**") pending in New Zealand pursuant to a special resolution of its shareholders made in accordance with sections 122(1) and 241(2)(a) of the New Zealand Companies Act (1993) (the "**Companies Act**").[2]  The Foreign Representative has commenced this case ancillary to the New Zealand Liquidation and respectfully submits this memorandum of law and represents as follows:

## PRELIMINARY STATEMENT

The Foreign Representative has commenced this chapter 15 case to, among other things, obtain emergency relief critical—indeed, indispensable—to Cryptopia's liquidation in the New Zealand Liquidation.  Specifically, the Foreign Representative seeks recognition to protect and preserve data of Cryptopia located in the United States.  Loss of the data would completely derail Cryptopia's liquidation efforts abroad.

As more fully described below, Cryptopia operated a digital asset exchange, which is an online network through which Cryptopia's millions of account holders traded hundreds of different types of digital assets (e.g., Bitcoin).  In January 2019, Cryptopia suffered a serious hack; the hackers looted some $16 million[3] worth of digital assets owned by various account holders.  To date, none of the stolen assets have been recovered.

---

[1] The other liquidator is Malcolm Russell Moore.

[2] A true and correct copy of the Companies Act is attached hereto as **Exhibit A**.

[3] All dollar amounts are in U.S. dollars.

On May 14, 2019, Cryptopia's shareholders placed the Company into liquidation, thereby commencing the New Zealand Liquidation.  The Liquidators suspended trading and transferred digital assets stored on Cryptopia's compromised network to secure locations.  Cryptopia holds the digital assets for its account holders, pooled by individual digital asset type.  In the aggregate, these digital assets are worth over $100 million.  The Liquidators have taken steps to obtain control over and custody of the digital assets in anticipation of making distributions to account holders in the course of the liquidation and in accordance with their statutory and fiduciary duties under the Companies Act.

Cryptopia's data is hosted on servers operated by Phoenix NAP LLC ("**PNAP**"), a company based in Arizona.  In particular, PNAP hosts an SQL (i.e., Structured Query Language) database that contains information about which account holders own which digital assets and in what quantities.  Additionally, the PNAP-hosted database contains the most current list of, and contact details for, all of Cryptopia's account holders.

PNAP hosts Cryptopia data pursuant to a Master Services Agreement (the "**MSA**") between the two companies.  As of May 14, 2019—i.e., the date the New Zealand Liquidation commenced—Cryptopia had made all payments due to PNAP through April 2019 and offered to make the May 2019 payment to ensure continued access to the database.  PNAP, however, declined to accept the Liquidators' offer.  Instead, by letter dated May 16, 2019, PNAP notified Cryptopia of its intent to terminate the MSA, citing Cryptopia's liquidation as the grounds for such prospective termination, and sought to extract payment of approximately $1.9 million dollars.  The basis for PNAP's $1.9 million demand remains unclear and only $137,000 was due for the month of May.  PNAP also has denied the Liquidators access to Cryptopia data.

Moreover, when the Liquidators sought explicit confirmation that PNAP would refrain from taking any steps that might compromise critical Cryptopia data pending the Liquidators' response to PNAP's demand, PNAP prevaricated, offering an ambiguous, non-responsive reply. Specifically, PNAP stated: "We will not do anything to your equipment."

At this time, the Liquidators cannot confidently proceed on the assumption that the critical Cryptopia data is safe. It is unclear whether PNAP believes it has any obligation to preserve the Cryptopia data, or to permit the Liquidators access to it. Moreover, PNAP has denied the Liquidators access to all Cryptopia data, whether hosted on servers owned by PNAP or on storage devices owned by Cryptopia. This is true even though Cryptopia is effectively "paid up" under the MSA, save for the May 2019 hosting fees, which, as noted, the Liquidators have already agreed to pay.

Under the circumstances, the Liquidators face a potentially disastrous outcome and urgently need relief from this Court. Absent relief from this Court, PNAP may overwrite Cryptopia data. As noted, the data contains the individual account holder allocations of the many different digital assets currently pooled by asset type and held by Cryptopia for its account holders. Without the ability to determine who owns what assets, the Liquidators simply cannot make any distribution to the rightful owners of the digital assets, which is the Liquidators' principal function—indeed, duty—under the Companies Act. The PNAP-hosted database contains all of the contact information for Cryptopia account holders, which may prove equally crucial to the Liquidators' ability to effectively and expeditiously administer the New Zealand Liquidation.

In short, without this data, the Liquidators cannot accomplish a chief objective of the New Zealand Liquidation—i.e., a fair and orderly distribution to Cryptopia account holders. As

demonstrated below, this case is a straightforward case for recognition under chapter 15, and the need for immediate action is clear.

## RELIEF REQUESTED

1.      Pursuant to the Motion for Recognition, the Foreign Representative respectfully requests, pursuant to sections 105(a), 362, 365, 1504, 1507, 1510, 1515, 1517, 1520, 1521 and 1522 of title 11 of the United States Code (the "**Bankruptcy Code**"), entry of an order substantially in the form attached to the Motion for Recognition as **Exhibit A** (the "**Recognition Order**") (i) recognizing the New Zealand Liquidation as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code; (ii) recognizing the Foreign Representative as the duly appointed "foreign representative," as defined in section 101(24) of the Bankruptcy Code in respect of the New Zealand Liquidation; (iii) recognizing, granting comity to, and giving full force and effect in the United States to the New Zealand Liquidation; (iv) entrusting to the Foreign Representative the administration, realization and distribution of all assets of the Debtor within the territorial jurisdiction of the United States; (v) providing for the application of section 365 to any executory contracts or unexpired leases between the Debtor and any counterparty (provided such contract or lease is governed by U.S. law), *nunc pro tunc* to the filing of the Chapter 15 Petition; and (vi) granting such other relief as the Court deems just and proper.

2.      Additionally, pursuant to the Emergency Motion for Provisional Relief, the Foreign Representative respectfully requests, pursuant to sections 105(a), 1504, 1507, 1510, 1515, 1517, 1519, 1520, 1521 and 1522 of the Bankruptcy Code, entry of an order substantially in the form attached to the Emergency Motion for Provisional Relief as **Exhibit A** (the "**Provisional Order**") (i) provisionally providing that section 362 of the Bankruptcy Code applies within the territorial jurisdiction of the United States with respect to the Debtor and property of the Debtor, (ii) provisionally entrusting the administration, realization and

distribution of the Debtor's assets located in the United States to the Foreign Representative, (iii) waiving compliance with Bankruptcy Rule 1007(a)(4)(B) and (iv) granting such other relief as the Court deems just and proper.

3.    The relief requested in the Motion for Recognition and the Emergency Motion for Provisional Relief is without prejudice to any additional relief the Foreign Representative may request.

4.    In support of the Motion for Recognition and the Emergency Motion for Provisional Relief, the Foreign Representative refers the Court to the statements contained in and exhibits attached to: *Declaration of David Ian Ruscoe in Support of the Motion for Recognition and Emergency Motion for Provisional Relief* (the "**Ruscoe Declaration**"), *Declaration of Paul Robert Heath in Support of the Motion for Recognition and Emergency Motion for Provisional Relief* (the "**Heath Declaration**"), and the *Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 and Local Rule 1007-3* (collectively, the "**Supporting Documents**"), which have been filed contemporaneously herewith and are incorporated herein by reference.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code, as well as the *Amended Standing Order of Reference* dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

6.    Venue is proper under 28 U.S.C. § 1410(1).  The Debtor's principal assets within the United States are located in New York.  The Debtor has an interest in certain funds deposited with Davis Polk & Wardwell ("**Davis Polk**") and held by Davis Polk in a trust account

5

located in New York, New York with JPMorgan Chase Bank, N.A. (the "**Retainer**").  *See, e.g., In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (finding venue where there was a retainer held by New York counsel in a New York account); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (holding that establishing a deposit account in New York "had the effect of establishing a basis for venue in [the Southern District of New York] under 28 U.S.C. § 1410(1)"); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-74 (Bankr. S.D.N.Y. 2014) (recognizing retainer as property for jurisdictional purposes).

7.    The statutory predicates for the relief requested are sections 105(a), 362, 365, 1504, 1507, 1510, 1515, 1517, 1519, 1520, 1521, and 1522 of the Bankruptcy Code.  The Foreign Representative has properly commenced this chapter 15 case under sections 1504 and 1509 of the Bankruptcy Code by the filing of a petition for recognition of the New Zealand Liquidation under section 1515 of the Bankruptcy Code.

## **BACKGROUND**

### A.    The Debtor

8.    Cryptopia, a New Zealand limited liability company, was incorporated on July 29, 2014.  Ruscoe Decl. ¶ 5.  Since it was formed and up to May 2019, when it went into liquidation, Cryptopia operated a digital asset exchange through which account holders traded digital assets online.[4]  *Id.* ¶ 5, 10.  Each account holder stored his/her/its digital assets in digital "wallets" held on Cryptopia's exchange network.  Trades occurred across the network and among the account holders through transfers to and from account holders' respective digital

---

[4] Cryptopia's founders, Adam Clark and Rob Dawson, both New Zealand citizens and residents, initially started the exchange as a hobby.  Once the business grew in size, they began working at Cryptopia full-time.  *See* Ruscoe Decl. ¶ 5.

wallets.  An account holder withdrew funds from Cryptopia's network by transferring them to a different digital wallet held on a different network.[5]  *Id.* ¶ 15.

9.     In 2017, Cryptopia's business grew significantly due to a dramatic increase in the value of Bitcoin.[6]  Specifically, in 2017, Bitcoin's value rose from $900 to nearly $20,000 per Bitcoin.  Over the same period, the number of Cryptopia account holders rose from 30,000 to 1 million.  *Id.* ¶ 6.  In 2018, Cryptopia's revenue was approximately $41.5 million.  But in 2019, Cryptopia's revenue plummeted to just over $10 million.  *Id.* ¶ 7.

10.     Currently, there are approximately two million Cryptopia account holders.  These account holders operate approximately 300,000 active accounts, the majority of which are located outside New Zealand.  Based on transactions in November and December 2018, trades involving U.S.-based account holders generated the majority of Cryptopia's revenues.  *Id.* ¶ 12.

11.     In January 2019, Cryptopia was hacked.  The hackers stole over $16 million worth of digital assets from the digital wallets of various account holders.  New Zealand authorities investigated the hack and made a forensic clone of Cryptopia's database as at mid-January 2019.  To date, none of the stolen assets have been recovered.  *Id.* ¶ 8.

12.     After the hack, Cryptopia briefly reopened its exchange to allow for limited trading.  *Id.* ¶ 9.  However, acting on professional advice, Cryptopia's shareholders determined that the company should cease trading and enter liquidation believing it was insolvent.  *Id.*  Accordingly, on May 14, 2019, Cryptopia's voting shareholders placed Cryptopia into liquidation, thereby commencing the New Zealand Liquidation.  *Id.* ¶ 10, Ex. A.  The

---

[5] More specifically, trades between Cryptopia account holders were reflected on Cryptopia's books with the digital assets actually moving on the blockchain; however, if an account holder wanted to withdraw from her Cryptopia account, she could transfer (on the blockchain) to a digital wallet outside Cryptopia's network.

[6] Bitcoin is the digital asset with the largest market capital (currently approximately $130 to $140 billion).  *Id.* ¶ 6.

following day, the Liquidators provided notice of their appointment to all known stakeholders, including account holders and other creditors, by publishing the notice on Cryptopia's website. *Id.* ¶ 31.[7]

13.     As of the commencement of the New Zealand Liquidation, Cryptopia account holders traded approximately 300 different types of digital assets, including some that were only traded on Cryptopia's exchange.   The aggregate value of digital assets held by Cryptopia for its account holders is currently estimated between $110 and $130 million.[8]  *Id.* ¶ 10.  All account holders are potential creditors of Cryptopia.  *See id.* ¶ 23.[9]  The Liquidators are still evaluating the terms and conditions under which account holders hold their digital assets with Cryptopia and determinations in that regard, informed by applicable New Zealand law, will be taken into account by the Liquidators when determining how the New Zealand Liquidation should proceed.  *Id.* ¶ 16.

14.     At this early stage of the New Zealand Liquidation, the Liquidators have suspended trading on Cryptopia's exchange while they investigate Cryptopia's affairs, and individual account holders are currently unable to remove the digital assets held in their respective digital wallets.  *See id.* ¶ 11.  Instead, Cryptopia holds all account holders' digital assets, pooled by individual asset type.  The Liquidators, pursuant to their statutory duties, have taken control over, and custody of, those digital assets.  *Id.* ¶ 14; Heath Decl. ¶ 30.  Specifically,

---

[7] *See also* https://cryptopia.co.nz.

[8] The digital asset market is extremely volatile.  For example, the value of Bitcoin has moved upwards in value by 50% in the past month.  *Id.* ¶ 13.  As a result, it is difficult to accurately estimate the aggregate value of the digital assets held by Cryptopia for its account holders.  *Id.* ¶ 11.

[9] Cryptopia's other creditors are trade creditors owed approximately $2.6 million in total.  *Id.* ¶ 16.

the Liquidators have transferred all of the wallets[10] under their control, together with passwords, to secure locations.  *Id.* ¶ 17.

**B.        Cryptopia Data and Contract Dispute**

15.    Data for Cryptopia accounts is hosted on servers operated by PNAP pursuant to the MSA.[11]  *Id.* ¶ 18, Ex. B.  PNAP is based in Arizona.  *Id.* ¶ 18.

16.    Critically, PNAP hosts an SQL database (the "**Database**") containing information about the allocation of various digital assets among individual account holders. Without that information, it is impossible to determine the amounts held for each of Cryptopia's 2 million account holders.  *Id.* ¶¶ 19, 23-24.  PNAP also hosts the most up-to-date list of account holders, which includes the contact details for those account holders.  *Id.* ¶ 19.

17.    As of May 14, 2019—i.e., the date of commencement of the New Zealand Liquidation —Cryptopia owed PNAP approximately $137,000 in fees for hosting services for the month of May 2019.  *Id.* ¶ 20.  The Liquidators agreed to pay that sum in order to ensure continued access to the Database.  *See id.* ¶ 21, Ex. D.  But PNAP declined the Liquidators' offer and informed the Liquidators it would seek legal advice instead.  *Id.* ¶ 21.  Thereafter, by letter dated May 16, 2019, PNAP notified Cryptopia of its intent to terminate the MSA at an unspecified date, relying on an *ipso facto* clause in the MSA purporting to permit PNAP to terminate the hosting agreement because Cryptopia had commenced the Liquidation.  *Id.* ¶ 20, Ex. C.  The letter also demanded payment of approximately $1.9 million.  That amount

---

[10] All of these wallets are either "cold" wallets, meaning they are currently offline, or "warm" wallets, meaning they are located on a secure server.  *Id.* ¶ 17.  However, the Liquidators cannot secure a significant portion of the digital assets due to their lack of access to Cryptopia data.  *Id.*  The Liquidators' inability to secure these assets presents yet another obstacle to effective administration of the New Zealand Liquidation.

[11] Cryptopia entered into the MSA by electronically signing an order form that incorporated by reference, and included a link to, the MSA.  *See id.* ¶ 18.

represents "all contractual fees and obligations relating to the early termination of the [MSA]."[12] *Id.*

18.    The Liquidators continue to analyze the merits of PNAP's claims—with the assistance of U.S. counsel—in order to appropriately respond to the May 16 letter.  In the meantime, PNAP has denied the Liquidators access to Cryptopia data.  *See id.* ¶ 21.

19.    Shortly after receiving the May 16 letter, the Liquidators asked PNAP to assure them that it would not compromise Cryptopia data pending the Liquidators' response to PNAP's demand.  *Id.* ¶ 21, Ex. D.  In response, PNAP stated:  "We will not do anything to your equipment."  *Id.*  PNAP's reference to "your equipment" may refer to certain physical storage devices owned by Cryptopia (but compromised by the January 2019 hack) and located at PNAP's premises in Arizona,[13] as opposed to Cryptopia's virtual data.  *See id.* ¶ 34 & n.4. PNAP's response may also mean that, while it will not "do anything" to Cryptopia's "equipment," it may nevertheless compromise Cryptopia data hosted on servers owned by PNAP.  In either case, the Liquidators, who owe statutory and fiduciary duties to Cryptopia's stakeholders, cannot assume that the critical Cryptopia data is safe.  PNAP's views regarding its obligations to preserve Cryptopia data are unknown and unclear.  And, as noted, PNAP has refused to grant the Liquidators access to all Cryptopia data, including data hosted on Cryptopia's own machines.

20.    Putting aside whether PNAP has a bona fide legal claim, there is grave concern that any failure to pay the amount demanded will result in PNAP overwriting data owned by Cryptopia, which would be nothing short of catastrophic for Cryptopia's account holders and the administration of the New Zealand Liquidation.  The Liquidators are required by

---

[12] The basis for PNAP's demand for $1.9 million is unclear; PNAP may be claiming that it is entitled to accelerate hosting fees under the MSA for the full term of the agreement.  *Id.* ¶ 20.

[13] Because they were compromised during the January 2019 hack, these machines will eventually need to be destroyed; accordingly, they have no realizable value to the Liquidators.  *Id.* ¶ 34 n.4.

statute to gather in and distribute Cryptopia's property, including the digital assets of Cryptopia's account holders. Accordingly, the Liquidators must secure and distribute to account holders over $100 million dollars' worth of digital assets. *Id.* ¶¶ 22-25.

21.    Simply put, without the Cryptopia data hosted by PNAP, the Liquidators cannot comply with their statutory duties, and the parties entitled to the digital assets (or to proceeds of a sale thereof) would be denied what is rightfully theirs. *Id.* ¶ 24.

## C.    The Debtor's Business Operations

22.    Cryptopia's registered office is, and has always been, in New Zealand.[14] *Id.* ¶¶ 5, 26. Even after commencement of the New Zealand Liquidation, Cryptopia's operations remain at Cryptopia's premises in Christchurch, New Zealand.[15] All board meetings were conducted in New Zealand, and all of Cryptopia's directors resided in New Zealand. *Id.* ¶ 27.

23.    At its peak, Cryptopia had over 100 employees, all based in New Zealand. Following the hack, Cryptopia decreased the number of its employees, and more employees were laid off after commencement of the New Zealand Liquidation. However, those that remain continue to work out of Cryptopia's New Zealand premises. *Id.* ¶ 28.

24.    Cryptopia's domain name (*cryptopia.co.nz*) is registered to Cryptopia through a New Zealand-based registrar. *Id.* ¶ 30.

## D.    Liquidation Activities

25.    Since their appointment, the Liquidators have already undertaken significant activities in connection with the New Zealand Liquidation, including:

---

[14] For the purposes of administrative convenience only, the Liquidators changed Cryptopia's registered address from Christchurch, New Zealand to their offices in Wellington, New Zealand. *Id.* ¶ 26.

[15] Cryptopia currently leases premises in New Zealand. *Id.* ¶ 27.

- Securing (a) Cryptia's physical premises; (b) digital assets[16]; and (c) cash held at Cryptopia's New Zealand bank account;

- Meeting with Cryptopia's staff, directors, and shareholders;

- Establishing communication lines to answer questions from account holders;

- Liasing with creditors;

- Cloning servers for data preservation purposes;

- Seeking urgent directions from the High Court of New Zealand; and

- Seeking legal advice on a range of issues.

*Id.* ¶ 33.

## BASIS FOR RELIEF REQUESTED

26.     For the reasons set forth below and in the Supporting Documents, the relief sought herein is appropriate under chapter 15.

## A.     The Debtor Is Eligible for Chapter 15 Relief

27.     To be eligible for chapter 15 relief, the Debtor must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code as well as the more specific eligibility requirements under section 1517(a) of the Bankruptcy Code.  In addition, the petition for recognition must meet the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).  As demonstrated below, the Debtor meets all eligibility requirements.

---

[16] As noted, the Liquidators have been unable to secure 100% of the digital assets due to lack of access to Cryptopia data.  *Id.* ¶ 17.

1.    **The Debtor Meets General Eligibility Requirements of Section 109(a) of the Bankruptcy Code**

28.    Section 103(a) of the Bankruptcy Code provides that chapter 1, which includes section 109(a), "appl[ies] in a case under chapter 15." 11 U.S.C. § 103(a). Thus, the Debtor must meet the eligibility requirements of section 109(a) of the Bankruptcy Code to obtain relief under chapter 15. Section 109(a) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a). Thus, under section 109(a), a foreign debtor must reside or have a domicile, a place of business or property in the United States to be eligible to file a chapter 15 petition. *In re Barnet*, 737 F.3d 238 (2d Cir. 2013).

29.    Section 109(a) of the Bankruptcy Code does not require a specific quantum of property in the United States, nor does it indicate when or for how long such property must have a U.S. situs. *See, e.g.*, *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). Courts hold that attorney retainers deposited in a New York bank account satisfy the "property in the United States" eligibility requirement of section 109(a) of the Bankruptcy Code. *See Octaviar*, 511 B.R. at 373-74 (finding that the debtor "had property in the United States in the form of a retainer[, which] is sufficient to satisfy the requirements of section 109(a) of the Bankruptcy Code," and that "the Foreign Representatives acted in good faith in transferring the funds to the Client Trust Account" to serve as a retainer); *Ocean Rig*, 570 B.R. at 700 (citing a retainer held by New York counsel in a New York account as a factor satisfying section 109(a) of the Bankruptcy Code); *see also In re Avanti Commc'ns Grp. plc*, 582 B.R. 603, 613-14 (Bankr. S.D.N.Y. 2018); *In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005); *In re Glob. Ocean Carriers, Ltd.*, 251 B.R. 31, 38-39 (Bankr. D. Del. 2000).

30.     Here, the Debtor satisfies the eligibility requirement of section 109(a).
The Debtor has property in the United States and in this district.  The Retainer is located in a
bank account in New York, New York.  The Retainer remains in the bank account as of the date
hereof and constitutes the Debtor's property (subject to Davis Polk's applicable rights).
Moreover, the Debtor has other U.S. property, including now-compromised computer servers
located at PNAP and the rights to the Database (which, while intrinsically without value because
this Database cannot be monetized, is critical to the administration of the New Zealand
Liquidation).

31.     Accordingly, the Debtor meets the general eligibility requirements of
section 109(a) of the Bankruptcy Code.

### 2.     *The Debtor Meets Specific Eligibility Requirements of Section 1517(a) of the Bankruptcy Code*

32.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a
hearing, "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign
proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning
of section 1502; (2) the foreign representative applying for recognition is a person or body; and
(3) the petition meets the requirements of section 1515."  11 U.S.C. § 1517(a).  Each of those
requirements has been satisfied in this case.

### (a)     *The New Zealand Liquidation Is a Foreign Proceeding Within the Meaning of Section 1502 of the Bankruptcy Code*

33.     Courts have previously recognized New Zealand liquidations as foreign
main proceedings.  *See, e.g.*,  *In re Cedenco Ohakune*, No. 11-30704 (Bankr. N.D. Cal. Mar. 25,
2011) [D.I. 15]; *In re Sail City Limited d/b/a Canterbury of New Zealand*, No. 09-36607 (Bankr.
D.N.J. Dec. 2, 2009) [D.I. 24].  Moreover, New Zealand has enacted the Insolvency (Cross-
border) Act 2006 to give effect to the UNCITRAL Model Law on Cross-Border Insolvency (the

"**Model Law**"), just as the United States has enacted chapter 15 to give effect to the Model Law. Heath Decl. ¶ 27.

34.     Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).  The New Zealand Liquidation meets each element of this definition because (i) it is a proceeding that is (ii) either judicial or administrative in character, (iii) collective in nature, (iv) in a foreign country, (v) authorized or conducted under a law related to insolvency or the adjustment of debts, (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court, and (vii) for the purpose of reorganization or liquidation.  Each of these elements is addressed separately below.

### (i)      The New Zealand Liquidation Is a Proceeding

35.     The hallmark of a "proceeding" is a "statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice."  *In re Betcorp Ltd.*, 400 B.R. 266, 277–78 (Bankr. D. Nev. 2009).  The New Zealand Liquidation is governed by the statutory framework set forth in Part 16 of the Companies Act.[17]  Specifically, as described in more detail in the Heath Declaration, the Companies Act specifies the powers and duties of a liquidator, including his or her principal duty to take possession of, protect, realize, and distribute the assets, or the proceeds

---

[17] More broadly, the Companies Act provides a statutory framework for the incorporation, governance, and management of New Zealand companies, and establishes a number of regimes designed to deal with different types of corporate financial failure, including a liquidation regime.  Heath Decl. ¶ 14.

from the realization of the assets, of the company to its creditors in accordance with the statutory priorities fixed by the Companies Act.  *See* Heath Decl. ¶¶ 29-30.  In this case, the Companies Act authorizes the Liquidators to take possession of all of Cryptopia's property (wherever situated) and to sell or otherwise dispose of it so that they may distribute it (or the proceeds of its sale) among creditors according to statutory priorities.  *Id.* ¶ 36.  Moreover, the Companies Act (a) sets forth the Liquidators' notice and reporting obligations and (b) permits creditors in a shareholder initiated liquidation (as here) to appoint a different liquidator in place of the one chosen by the shareholders.  *Id.* ¶¶ 24, 35.[18]  The New Zealand Liquidation is therefore a "proceeding" because the Companies Act falls within the type of specific statutory framework described in the case law.  *See, e.g.*, *Betcorp*, 400 B.R. at 277–78.

> (ii)     *The New Zealand Liquidation Is Judicial or Administrative in Character*

36.     A proceeding that is at times administrative in character and at times judicial in character satisfies this element of the definition of a foreign proceeding.  *See In re ABC Learning Centres Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013).  A proceeding is administrative where a non-judicial party performs tasks such as managing assets and conducting investigations, while a proceeding is judicial when a court exercises its supervisory powers.  *See id.*

37.     Under the Companies Act, the Liquidators are responsible for the management of Cryptopia; Cryptopia's directors are, for all practical purposes, *functus officio*.  *See* Heath Decl. ¶ 16.  The Liquidators also have plenary power to get in and realize Cryptopia's

---

[18] *See also* Companies Act §§ 255, 257.

assets, whether located in New Zealand or elsewhere. *Id.* ¶ 36.[19] To ensure that they can locate and take possession of Cryptopia's assets, the Liquidators may exercise statutory powers to obtain documents belonging to Cryptopia, as well as information from company insiders and third parties. *See id.* ¶ 38. Moreover, the Companies Act authorizes the Liquidators to examine on oath persons having knowledge of Cryptopia's affairs, and their statutory duty to protect Cryptopia's assets enables them to seek interim injunctive relief. *See id.*

38.     Once a liquidator has gathered in all assets of the company, he or she is obliged to distribute them in accordance with statutory priorities.[20] By the time of distribution, creditors will have lodged proofs of claim with the liquidator to establish their respective debts. Accordingly, the New Zealand Liquidation is administrative in nature. The liquidator decides the amount for which each proof of claim should be admitted and a creditor has the right to apply to the New Zealand Court for leave to review that finding. *Id.* ¶ 39.

39.     The New Zealand Liquidation also has a judicial character. All liquidations—including voluntary liquidations—are subject to the supervision of the High Court of New Zealand[21] (the "**New Zealand Court**").

40.     In *ANZ National Bank Ltd. v. Sheahan*, the New Zealand Court considered whether liquidators appointed by the shareholders of a company (as here) were nonetheless to be treated as officers of the New Zealand Court subject to its supervision, both in respect of the

---

[19] In exercising the power to bring in the assets of a company, a liquidator is entitled to bring claims to claw-back amounts paid to creditors of the company in preference to those who claim in the liquidation. For example, such claims may be brought in respect of insolvent voidable transactions, transactions at an undervalue, and voidable securities and charges. Heath Decl. ¶ 40. Contested claims in respect of antecedent transactions of that type will generally be determined by the New Zealand Court. *Id.*

[20] A non-exhaustive list of the types of claims for which priority is given includes the costs and expenses of administration, employee claims (up to a specified sum), and particular classes of revenue debts. Heath Decl. ¶ 29.

[21] The High Court of New Zealand is a senior (or superior) court that has general jurisdiction in relation to both civil and criminal proceedings under New Zealand law. *See* Heath Decl. ¶ 31; Section 12, Senior Courts Act 2016 (NZ), *available at* http://legislation.govt.nz/act/public/2016/0048/latest/DLM5759318.html.

realization of assets and the investigation of the affairs of the company in liquidation.  The New Zealand Court (specifically, former Justice Paul Heath) held that its ability to exercise its supervisory jurisdiction over liquidators under the Companies Act, as well as its inherent jurisdiction, extends to all liquidators, however appointed.  *Id.* ¶ 32.  In short, the New Zealand Court supervises voluntary liquidators.

41.    In exercising its supervisory jurisdiction over the Liquidators, the New Zealand Court may (among other things): (a) give directions in relation to any matter arising in connection with the New Zealand Liquidation; (b) confirm, reverse or modify any act or decision of the Liquidators; (c) review or fix the remuneration of the Liquidators at a level which is reasonable in the circumstances; and (d) declare whether or not the Liquidators were validly appointed or have validly assumed custody or control of property.  *See id.* ¶ 31.

42.    Therefore, the New Zealand Liquidation is also judicial in nature.

(iii)    *The New Zealand Liquidation Is Collective in Nature*

43.    A proceeding is "collective" if it considers the rights and obligations of all creditors.  *See ABC Learning Centres*, 445 B.R. at 328; *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018).  The New Zealand Liquidation is a process that is designed to realize Cryptopia's assets so that they may be distributed to all creditors of the Company, *pari passu*, in accordance with statutory priorities; not for the benefit of any one creditor.[22]  *See* Heath Decl. ¶ 29.  In identifying the principal duty of a liquidator, the Companies Act makes clear that the New Zealand Liquidation is collective in nature.  That duty requires a liquidator to take possession of, protect, realize, and distribute the assets, or the proceeds of the

---

[22] "The *pari passu* rule is the fundamental principle on which insolvency law operates in New Zealand. The rule requires the proceeds of sale of assets of an insolvent entity to be distributed among the creditors ratably in accordance with statutory priorities."  3 Collier International Business Insolvency Guide ¶ 34.02.

realization of the assets, of the company to its creditors in accordance with the Companies Act. The Companies Act also sets out the order of payments that must be made by a liquidator when distributing the proceeds of realization of company assets. *Id.* ¶¶ 30, 36. The New Zealand Liquidation is therefore collective in nature.

<em>(iv)    The New Zealand Liquidation Is Located in a Foreign Country</em>

44.    Cryptopia is incorporated in New Zealand, and its liquidation is being conducted in New Zealand. *See generally* Ruscoe Decl. The power to manage the company is held by the Liquidators, who are both located in New Zealand. *See* Heath Decl. ¶ 16. The Liquidators are subject to the supervision of the New Zealand Court. *See id.* ¶ 32. There can be no doubt that the New Zealand Liquidation is located in the foreign country of New Zealand.

<em>(v)    The New Zealand Liquidation Is Authorized or Conducted Under a<br>Law Related to Insolvency or the Adjustment of Debts</em>

45.    In cases where a New Zealand company is insolvent and has no realistic prospects of continuing its business, it is placed in liquidation. *Id.* ¶ 16. Under the Companies Act, a company may be placed in liquidation in one of four ways: (1) shareholders entitled to vote and voting on the question pass a special resolution to put the company into liquidation; (2) a company's board of directors resolve to put the company into liquidation on the occurrence of an event specified in the company's Constitution; (3) the New Zealand Court orders that a company be placed in liquidation; or (4) a resolution to put a company into liquidation is passed by creditors at a "watershed meeting." *Id.* ¶ 17. Cryptopia was put into liquidation by a special resolution of its shareholders in accordance with the Companies Act. *Id.* ¶ 18. As a result, the Liquidators possess all powers necessary to carry out the functions and duties of liquidators, or otherwise expressly conferred on them by the Companies Act. *Id.* ¶ 36. Moreover, as explained in the Heath Declaration, the Companies Act establishes a regime to deal with insolvency. *See*

19

*generally id.*   Thus, the New Zealand Liquidation is authorized and conducted under a law related to insolvency.

> (vi)     *Under the New Zealand Liquidation, the Debtor's Assets and Affairs Are Subject to the Control or Supervision of a Foreign Court*

46.     "[T]he requirement that the debtor's assets be subject to the control and supervision of a foreign court does not require that the foreign proceedings play out entirely in a judicial context like cases under the Bankruptcy Code.  The ability of a party to ask for court assistance concerning the proceeding is sufficient to satisfy this element."   8 Collier on Bankruptcy ¶ 1501.03 (16th ed. 2018); *see also ENNIA*, 594 B.R. at 640 (finding a proceeding subject to supervision of a foreign court where the court's approval was required to initiate or terminate the proceeding, modify certain contracts to which the debtor was party and compensate estate professionals).  Here, the New Zealand Court plays a significantly larger role than this minimum requirement.  Specifically, as described above, the New Zealand Court exercises a general supervisory and, in appropriate cases involving urgency, summary jurisdiction over all liquidators, in a manner akin to the New Zealand Court's supervision of one of its officers.  Heath Decl. ¶ 32.  Indeed, the Liquidators anticipate the need to seek guidance from the New Zealand Court on a range of issues that they expect to arise in the course of the New Zealand Liquidation.  In fact, the Liquidators have already sought and obtained permission from the New Zealand Court to vary statutory reporting obligations to creditors and shareholders.[23]  Ruscoe

---

[23] Moreover, in the event that the Liquidators cannot access the Database—such that determining the individual account holder allocations of the various digital assets would be impossible—they would likely be asked by the New Zealand Court to assist in devising a scheme of distribution best approximating the fairest distribution in the circumstances.  Among other things, however, because the substantial professional costs of such an exercise would need to be funded from realization of digital assets held by Cryptopia, the Liquidators are anxious to avoid such an outcome.  Ruscoe Decl. ¶ 24.

Decl. ¶ 31, Ex E.[24]   The Liquidators' New Zealand counsel have also asked the Chief Judge of

the New Zealand Court (Justice Venning) to allocate a specific judge to deal with all issues

pertaining to Cryptopia that come before the New Zealand Court.  *Id.* ¶ 32; Heath Decl. ¶ 34.

The New Zealand Liquidation is therefore subject to the control or supervision of a foreign court.

(vii)    *The New Zealand Liquidation Is for the Purpose of Reorganization or Liquidation of the Debtor*

47.    Courts typically look to the express purpose of the proceedings under the

applicable statute to determine whether a foreign proceeding is for the purpose of reorganization

or liquidation of the debtors.  *See ABC Learning*, 445 B.R. at 332.  Accordingly, this element is

usually self-evident and is rarely disputed.  *See* 8 Collier on Bankruptcy ¶ 1501.03 (16th ed.

2018).  Such is the case here, where the Companies Act expressly establishes the regime for

liquidation.  *See generally* Heath Decl.  As a result of the New Zealand Liquidation, Cryptopia's

assets will be liquidated and used to pay Cryptopia's creditors—in particular, its account

holders—in accordance with the statutory priorities of the Companies Act.[25]  *Id.* ¶ 36; *see also*

Ruscoe Decl. ¶¶ 23-24.  The New Zealand Liquidation is therefore a proceeding for the purposes

of liquidation.

(b)    *The New Zealand Liquidation Is a "Foreign Main Proceeding"*

48.    Under section 1502(4) of the Bankruptcy Code, the term "foreign main

proceeding" means "a foreign proceeding pending in the country where the debtor has the center

of its main interests" ("**COMI**").  *See, e.g.*, *In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir.

---

[24] Ordinarily, under the Companies Act, a liquidator must send a report to creditors by mail within five days of his or her appointment.  The Liquidators requested permission to vary their reporting obligations because it would have been impossible for them to comply with this requirement, given that most account holders are offshore and contactable only by email.  Email, however, was also not a viable option, given that after the January 2019 hack emails sent by Cryptopia to account holders took four days to deliver.  Given these circumstances, the New Zealand Court granted an order allowing the Liquidators to post reports on Cryptopia's website.  Ruscoe Decl. ¶ 31, Ex. E.

[25] Once Cryptopia's liquidation is complete, Cryptopia will be removed from the New Zealand Companies Register on the application of the Liquidators.  Companies Act § 318(1)(e).

21

2013) (affirming recognition of foreign main proceeding); *Ocean Rig*, 570 B.R. at 702-04 (recognizing foreign main proceeding); *Suntech*, 520 B.R. at 416–17 (same). Absent evidence to the contrary, a debtor's registered office is presumed to be its COMI. 11 U.S.C. § 1516(c). *See also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Here, the Debtor's registered office is, and always has been, located in New Zealand, creating a presumption that New Zealand is Cryptopia's COMI.

49. Although this presumption that New Zealand is the COMI of the Debtor is rebuttable, here other relevant factors to be considered also point to New Zealand. Specifically, courts consider a variety of factors including "the location of the debtor's headquarters," "the location of the debtor's primary assets," "the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case" and "the jurisdiction whose law would apply to most disputes." *Fairfield Sentry*, 714 F.3d at 137 (quoting *In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

50. In this case, Cryptopia has always been registered in New Zealand, and New Zealand serves as Cryptopia's headquarters. The managers are, and always have been, located in New Zealand. At all times since they have served as Cryptopia's liquidators, the Liquidators have been based in New Zealand. Prior to appointment of the Liquidators, Cryptopia was managed by its board of directors; at all times, the members of the board were based in New Zealand and made decisions for Cryptopia from New Zealand. All board meetings were conducted in New Zealand. Cryptopia's remaining employees work out of Cryptopia's New Zealand premises. *See* Ruscoe Decl. ¶¶ 26-29.

51.    Cryptopia's primary creditors—its account holders—are located in numerous countries throughout the world, as are its shareholders.  *See id.* ¶ 12.  This should come as no surprise, given the international nature of Cryptopia's (former) business. [26] Accordingly, this factor does not rebut the presumption—or the numerous other factors indicating—that New Zealand is Cryptopia's COMI.  *See In re Manley Toys Ltd.*, 580 B.R. 632, 645-48 (Bankr. D.N.J. 2018) (finding debtor's COMI to be Hong Kong even though a majority of the creditors was located in the United States), *aff'd*, 597 B.R. 578 (D.N.J. 2019); *Betcorp*, 400 B.R. at 292 (fact that debtor's only creditors were located in the United Kingdom and the United States did not outweigh other factors—including location of liquidation activities— placing debtor's COMI in Australia); *Fairfield Sentry*, 714 F.3d at 139 (finding debtor's COMI to be the British Virgin Islands "even though [the debtor] had assets in other jurisdictions, [because] the administration of [the debtor's] affairs in the relevant time was orchestrated from the BVI").  Presumably, these creditors—who did business with a New Zealand company— would expect COMI to be in New Zealand.

52.    Cryptopia's primary tangible assets are located in New Zealand. Cryptopia holds cash (approximately $692,000) in New Zealand bank accounts.  Its fixed assets are predominately located in New Zealand; these assets are worth, in total, some $1.4 million and include computer and office equipment.  Ruscoe Decl. ¶ 29.

53.    Finally, New Zealand law—i.e., the Companies Act—governs Cryptopia's affairs, as set forth in the company's Constitution.  A true and correct copy of Cryptopia's Constitution is attached hereto as **Exhibit B**.  *See also* Heath Decl. ¶ 14 (explaining that

---

[26] Likewise, Cryptopia has trade creditors in different jurisdictions—namely, New Zealand and the United States.  Its largest trade creditor is located in New Zealand.  Additionally, the majority of its debt to trade creditors is owed to New Zealand-based companies.  Ruscoe Decl. ¶ 16.

Cryptopia is incorporated under the Companies Act, which provides a statutory framework for the incorporation, governance, and management of New Zealand companies).  The Companies Act also governs the New Zealand Liquidation, and the New Zealand Liquidation is subject to the supervision of the New Zealand Court.[27]

54.    The foregoing factors all point to New Zealand as the proper COMI jurisdiction.  Another important factor in determining the COMI of a Debtor is the "expectations of its creditors."  *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 225 (Bankr. S.D.N.Y. 2017); *see also Bear Stearns*, 374 B.R. at 130 (holding that the debtors' COMI was "the place where the [debtors'] conduct the administration of their interests on a regular basis and is therefore ascertainable by third parties").  The Debtor's primary creditors—its account holders— all conducted trading with a New Zealand-based business operating a digital asset exchange. The expectations of these account holders weigh heavily in favor of New Zealand as Cryptopia's COMI.

55.    There is no other foreign country that could even be considered as a candidate to be the Debtor's COMI.  Accordingly, because the Debtor's COMI is located in New Zealand, the New Zealand Liquidation is a foreign main proceeding and thus the first element of section 1517(a) of the Bankruptcy Code is satisfied.

(c)    *The Chapter 15 Case Has Been Commenced by a Duly Authorized Foreign Representative*

56.    The Foreign Representative is duly authorized to serve in its capacity as a foreign representative in this chapter 15 case and, as such, satisfies the second condition for entry

---

[27] As noted, the Liquidators' New Zealand counsel have asked the Chief Judge of the New Zealand Court to assign a specific judge to the New Zealand Liquidation, given the number and complexity of legal issues that are anticipated to arise in the course of Cryptopia's liquidation.

of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.  The

term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

57.    Here, Cryptopia was put into liquidation by a special resolution of its

shareholders.  The Companies Act enables shareholders to pass a special resolution in writing, in

lieu of a formal meeting of shareholders.  The ability to pass a special resolution (in the form to

which the Companies Act refers) in lieu of a meeting of shareholders is subject to anything to the

contrary in the company's Constitution.  Cryptopia's Constitution provides for Class A and Class

B shares.  Only Class A shares have voting rights in respect of a resolution to put the company

into liquidation.  All four Class A shareholders signed the special resolution.  There is nothing in

the Constitution that otherwise modifies the requirements of the Companies Act.  Therefore, the

special resolution complied with the requirements of the Companies Act, and had the desired

effect of putting Cryptopia into liquidation and appointing the Liquidators as Cryptopia's

liquidators.  Heath Decl. ¶¶ 20-22.

58.    Moreover, irrespective of the mode by which a liquidator is appointed, the

Companies Act authorizes a liquidator to exercise all powers necessary to carry out the functions

and duties of a liquidator, including taking possession of, protecting, realizing, and distributing

the company's assets.  *Id.* ¶ 36.  And, pursuant to the Companies Act, the Liquidators are

responsible for the administration of Cryptopia's assets and affairs.  *See id.* ¶ 16.

59.    Finally, the Companies Act empowers the Foreign Representative to

commence proceedings, inside or outside of New Zealand.  *Id.* ¶ 25.  Specifically, the

Liquidators, pursuant to the Companies Act, can commence, continue, discontinue and defend legal proceedings. *Id.* Moreover, acting jointly, the Liquidators appointed Mr. Ruscoe as the Foreign Representative for this chapter 15 proceeding. Ruscoe Decl. ¶ 37, Ex. F.

60. Accordingly, Mr. Ruscoe is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

### 3. *The Petition for Recognition Meets the Requirements of Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4)*

61. This chapter 15 case was duly and properly commenced as required by section 1504 of the Bankruptcy Code by filing a petition for recognition pursuant to section 1515(a) of the Bankruptcy Code. Pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition must be accompanied by one of the following:

a    a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

b    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

c    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

62. A copy of the special resolution placing Cryptopia into liquidation by appointing the Liquidators is attached to the Ruscoe Declaration as Exhibit A thereto.

63. The petition for recognition was filed accompanied by all fees, documents and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), including (i) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (ii) a list containing (a) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, (b) all parties to litigation pending in the United States in which the Debtor is a party at the time of

the filing of this chapter 15 case and (c) certain entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (iii) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representative; and (iv) a certified copy of the special resolution placing Cryptopia into liquidation by appointing the Liquidators.  See *Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(A)(4) and 7007.1 and Local Rule 1007-3*, filed herewith.  *See also Bear Stearns*, 374 B.R. at 127 ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

64.     Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with the petition for recognition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met and this chapter 15 case was properly commenced.  *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

65.     As demonstrated above, the Debtor also meets both the general eligibility requirements of section 109(a) of the Bankruptcy Code and the specific eligibility requirements of section 1517(a) of the Bankruptcy Code.  Therefore, the Debtor is eligible for chapter 15 relief.

   *4.     The Relief Requested Is Consistent with United States Public Policy and Policy Behind the Bankruptcy Code*

66.     A bankruptcy court may refuse to grant relief under chapter 15 if the action "would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506. Courts have construed this free-floating public policy exception narrowly.  *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 139 (S.D.N.Y. 2012) (concluding that granting recognition was not within the "narrow[]" public policy exception despite absence of a formal

mechanism for unsecured creditors to participate in the foreign proceeding); *ABC Learning Centres*, 445 B.R. at 335 ("This exception is to be narrowly construed."); *cf. In re OAS S.A.*, 533 B.R. 83, 104-05 (Bankr. S.D.N.Y. 2015) (concluding that recognition of Brazilian proceedings were not manifestly contrary to public policy).   The proper focus is on whether a foreign proceeding violates "fundamental standards" of procedural "fairness," *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010), and whether relief "would impinge severely [upon] a U.S. constitutional or statutory right." *In re ABC Learning Centres*, 728 F.3d 301, 309 (3d Cir. 2013) (internal quotation marks omitted).

67.   The New Zealand Liquidation is clearly not "manifestly contrary to the public policy of the United States."   As discussed, the Liquidators published notice of their appointment on Cryptopia's website.   Ruscoe Decl. ¶ 31.   Moreover, the Companies Act provides for a liquidation process that ensures fair treatment of creditors.   The Liquidators are required to act for the benefit of Cryptopia's creditors as a collective.   *See* Heath Decl. ¶ 29-30.

68.   Indeed, recognizing the New Zealand Liquidation will assist the orderly administration of the Debtor's liquidation, consistent with the public policy of the United States that the Bankruptcy Code embodies.   Congress articulated specific objectives for chapter 15 of the Bankruptcy Code, including:

(1)   cooperation between—

(A)   courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and

(B)   the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

(2)   greater legal certainty for trade and investment;

(3)   fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4)    protection and maximization of the value of the debtor's assets; and

(5)    facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

69.    Recognition of the New Zealand Liquidation under chapter 15 comports with these objectives.  Granting recognition facilitates the fair and efficient liquidation of the Debtor's assets, centralizes the process in the Debtor's home jurisdiction subject to supervision by the New Zealand Court, and protects the interests of all stakeholders and interested parties. For instance, by granting the relief requested herein, this Court will enable the Debtor to facilitate a meaningful distribution for its creditors; indeed, absent such relief, it will be impossible for the Liquidators to properly distribute digital assets to Cryptopia's account holders. Avoiding such a potential adverse outcome through the formal recognition of the New Zealand Liquidation and entrustment of the database to the Foreign Representative effectuates the principal objectives Congress articulated when it enacted chapter 15 of the Bankruptcy Code and otherwise comports with U.S. public policy.

**B.    Provisional Relief Within the Scope of Section 1519 of the Bankruptcy Code Is Urgently Necessary and Appropriate Under the Circumstances**

70.    As shown above, the New Zealand Liquidation qualifies for recognition. The most pressing reason for seeking recognition at this time is to secure emergency relief that will enable the New Zealand Liquidation to go forward without disruption.  Accordingly, the Foreign Representative also seeks entry of the Provisional Order to (i) make section 362 of the Bankruptcy Code applicable in this chapter 15 case on a provisional basis, pursuant to sections 1519(a)(1), 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (ii) entrust to the Foreign Representative the administration, realization and distribution of all assets of the Debtor

within the territorial jurisdiction of the United States pursuant to 1519(a)(2), 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code of the Bankruptcy Code. Provisional application of the stay and entrustment of the Debtor's U.S. assets is crucial to prevent irreparable injury to the New Zealand Liquidation and the value of Cryptopia's and its account holders' assets.

71.    Pursuant to section 1517, an order recognizing a foreign proceeding may only be entered after notice and a hearing. 11 U.S.C. § 1517(a). Pursuant to Bankruptcy Rule 2002(q), the notice period must be at least 21 days. Fed. R. Bankr. P. 2002(q). Upon recognition of a proceeding as a foreign main proceeding, among other things, the automatic stay provided by section 362 applies. 11 U.S.C. § 1520(a)(1). Absent provisional relief, there is no stay applicable in the U.S. during the period between filing the chapter 15 petition and entry of a recognition order. Interim relief is necessary to protect Cryptopia and its assets from diminution in value caused by collection or enforcement efforts of creditors prior to the disposition of the petition. Provisionally granting entrustment is also necessary to protect against the risk that PNAP may destroy (or threaten to destroy) the data that it hosts, which is critical to the New Zealand Liquidation, in an attempt to extract additional payments from the Debtor. Therefore, this court should grant provisional relief entrusting administration of the Debtor's U.S. assets to the Foreign Representative and staying the commencement or enforcement of actions against Cryptopia and its assets under section 362.

72.    Section 1519(a)(1) expressly authorizes this Court to stay execution against a debtor's assets during the pendency of a petition. And section 1519(a)(2) expressly authorizes this Court to entrust a foreign representative with the administration of a debtor's U.S. assets. Moreover, section 1519(a)(3) of the Bankruptcy Code authorizes the Court to grant, on a provisional basis, any relief available pursuant to section 1521(a)(7). As noted above, section

1521(a)(7) provides that the Court may grant a foreign representative any relief available to a trustee, subject to certain exceptions not relevant here.  11 U.S.C. § 1521(a)(7).  Section 362 and entrustment are essential features of the Bankruptcy Code that fall within this provision.  Finally, section 105(a) of the Bankruptcy Code further allows the Court to "issue any order . . . necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

73.     Courts regularly grant provisional relief applying section 362 of the Bankruptcy Code to a Chapter 15 proceeding before recognition.  *See, e.g.*, *In re Bluberi Gaming Techs., Inc.*, No. 16-5364 (Bankr. N.D. Ill. Feb. 22, 2016) [D.I. 38] (order granting provisional relief, including application of section 362); *In re Catalyst Paper Corp.*, No. 12-10221 (Bankr. D. Del. Jan. 19, 2012) [D.I. 22] (order granting provisional relief, including application of section 362); *In re Arctic Glacier Int'l Inc.*, No. 12- 10605 (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (order granting provisional relief, including application of section 362); *In re Elpida Memory, Inc.*, No. 12-10947 (Bankr. D. Del. Mar. 21, 2012) [D.I. 25] (order granting provisional relief, including application of section 362); *In re Angiotech Pharm. Inc.*, No. 11-10269 (Bankr. D. Del. Jan. 31, 2011) [D.I. 26] (order granting provisional relief, including application of section 362). Courts have also granted provisional relief entrusting a foreign representative with a debtor's U.S. assets.  *See, e.g.*, *In re Japan Airlines Corp.*, No. 10-10198 (Bankr. S.D.N.Y. Jan. 28, 2010) [D.I. 38] (order granting provisional relief, including application of section 1519(a)); *In re Atlas Shipping A/S*, No. 09-10314 (Bankr. S.D.N.Y. Jan. 27, 2009) [D.I. 7] (order granting provisional relief, including application of section 1519(a)).

74.     Provisional relief pursuant to section 1519 of the Bankruptcy Code is available where the foreign representative can satisfy the standard for injunctive relief.  11 U.S.C. § 1519(e).  Injunctive relief is appropriate where the movant "establish[es] that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This standard is satisfied here, and the Foreign Representative is therefore entitled to the provisional relief requested pursuant to section 1519 of the Bankruptcy Code.

### 1. There Is a Substantial Likelihood of Recognition of the New Zealand Liquidation as a Foreign Main Proceeding

75.     The Foreign Representative is likely to succeed in his request for recognition of the New Zealand Liquidation. As set forth above, recognition of the New Zealand Liquidation as a foreign main proceeding is appropriate because (i) the New Zealand Liquidation is a foreign main proceeding within the meanings of sections 101(23) and 1502(4) of the Bankruptcy Code, (ii) the Foreign Representative is an authorized foreign representative within the meaning of section 101(24) of the Bankruptcy Code, and (c) the petition for recognition was properly filed in accordance with section 1515 of the Bankruptcy Code, accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules. Upon recognition of the New Zealand Liquidation, section 362 of the Bankruptcy Code will automatically apply in this chapter 15 case pursuant to section 1520(a)(1) of the Bankruptcy Code. 11 U.S.C. § 1520(a)(1).

### 2. Cryptopia Will Suffer Irreparable Harm Absent Provisional Relief

76.     Application of provisional relief in these cases is critical to the prevention of irreparable damage to Cryptopia's New Zealand Liquidation. This chapter 15 case was commenced for the purpose of obtaining the assistance of the Court in respect of the New Zealand Liquidation to obtain protections necessary to preserve the value of Cryptopia's assets. As noted in the Ruscoe Declaration, Cryptopia has data in the United States. Furthermore, many

of Cryptopia's creditors—i.e., account holders—are in the United States.  Unless the Provisional

Order is entered, Cryptopia faces the possibility of immediate and irreparable harm caused by the

destruction of the data hosted by PNAP, as well as actions being brought against the Debtor or its

U.S. assets.  Decentralized administration of Cryptopia's assets would be extremely prejudicial

to Cryptopia's liquidation process, would rob the New Zealand Liquidation of its intended effect,

and harm other creditors.  Crytopia also faces the possibility of immediate and irreparable harm

caused by PNAP choosing to delete the data that it hosts, which would upend administration of

the New Zealand Liquidation.

77.     Indeed, PNAP has already notified Cryptopia that it intends to terminate a

data hosting agreement due to the Company's insolvency, and Cryptopia reasonably fears that

PNAP may "wipe" or destroy that data absent payment.  This data was critical to Cryptopia's

operations, and reconciling most creditors' claims will be impossible without it.  This is but one,

albeit quite clear, example of the type of immediate and irreparable harm that Cryptopia could

suffer if the Provisional Order is not entered.  As a result of the application of the automatic stay,

PNAP would be prohibited from terminating the MSA.  Specifically, pursuant to section 362 of

the Bankruptcy Code, termination of a contract after the commencement of a bankruptcy case

constitutes a violation of the automatic stay.  *See, e.g.*, *In re Probulk Inc.*, 407 B.R. 56, 61–62

(Bankr. S.D.N.Y. 2009) ("[section 362(a)(3) of the Bankruptcy Code] . . .  prevents a party to a

contract from terminating the contract or taking action to deem the contract terminated after the

bankruptcy case has commenced without seeking relief from the stay").

78.     A number of courts have recognized the need to provide provisional relief

in a chapter 15 case pending final recognition of a foreign proceeding in order to ensure the

orderly distribution of a debtor's assets in a single proceeding and avoid the irreparable harm

resulting from piecemeal enforcement across multiple jurisdictions.  *See, e.g.*, *Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) (harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group"); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (stating that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").

79.     Unless the Provisional Order is granted and all creditors are enjoined, Cryptopia faces the risk that creditors may destroy data critical to the New Zealand Liquidation, take enforcement actions, or attempt to recover against its U.S. assets.  Such actions would diminish the value of Cryptopia's assets and cause significant delay and disruption to Cryptopia's liquidation process.  The relief requested herein is necessary to protect against these risks.  The purpose of chapter 15 is to provide such protection by, among other things, ensuring that all of a debtor's creditors are subject to a stay, thereby preventing some creditors from obtaining an unfair advantage over others.  *See* 11 U.S.C. § 1501.

### 3.    The Balance of Equities and Public Interest Favor Granting Provisional Relief

80.     Provisional relief is also needed in this case because there is no other adequate remedy at law to enjoin Cryptopia's creditors from taking enforcement actions or attempting to recover against Cryptopia's U.S. assets.

81.     In contrast to the harm that Cryptopia and the Foreign Representative would suffer absent provisional relief, preservation of the status quo through imposition of the automatic stay while the Foreign Representative and Cryptopia undertake the New Zealand Liquidation will not prejudice creditors.  Similarly, granting entrustment to the Foreign

Representative will safeguard the critical data that PNAP hosts. The relief requested is intended to be temporary, extending only through the disposition of the petition for recognition. If recognition of the New Zealand Liquidation is granted, the stay being requested on a provisional basis will come into effect automatically. Moreover, the Provisional Order specifically provides that any creditor that believes it has been, or would be, harmed by the provisional relief granted therein may file a motion with the Court seeking relief therefrom. Granting the request for provisional relief actually will benefit Cryptopia's creditors because it will ensure the value of Cryptopia's assets are preserved and maximized for the benefit of, and fair distribution to, all creditors.

82.     Granting the requested provisional relief will help advance the purpose and objectives of chapter 15 to provide effective mechanisms for dealing with cases of cross-border insolvency, promote cooperation between U.S. and foreign courts, provide greater legal certainty for trade and investment, ensure the fair and efficient administration of cross-border insolvencies in a manner that protects the interests of the debtor and all creditors and other interested entities, protect and maximize the value of the debtor's assets, and facilitate the rescue of financially troubled businesses. 11 U.S.C. § 1501(a)(1)-(5). Accordingly, the provisional relief requested is consistent with the public policy embodied in chapter 15 of the Bankruptcy Code and will promote the fair and efficient administration of this cross-border insolvency proceeding.

**C.     Applying Section 365 Upon Recognition, Pursuant to Section 1521, Is Necessary and Appropriate**

83.     The Foreign Representative also requests that the Court extend the protections afforded by section 365 of the Bankruptcy Code to this chapter 15 case.

35

84.     "[W]here necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief. . . ."  11 U.S.C. § 1521(a).  Section 1521(a) further provides that the court may grant "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."  *Id.* § 1521(a)(7).

85.     Section 365 is a fundamental provision under the Bankruptcy Code that enables a debtor to preserve valuable commercial relationships, including preventing counterparties from attempting to terminate their contracts or halt performance as a result of the debtor's insolvency.  *See In re Penn Traffic Co.*, 524 F.3d 373, 382 (2d Cir. 2008) (noting that a "main purpose of Section 365 is to . . . provid[e] a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so") (internal quotation marks omitted).  The provision not only enables a debtor to assume contracts that are beneficial and valuable, but also to reject those that are burdensome.  *See id.*  Application of section 365 in this chapter 15 case is necessary to protect against the disruption to liquidation efforts that would result from any attempt by a contract counterparty to exercise remedies or cease performance under any executory agreement with Cryptopia.  It also would give Cryptopia the ability to assume or reject contracts and leases—options that would be complementary to relief available in the New Zealand Liquidation, and may be necessary in the event that any of Cryptopia's U.S. counterparties assert that they are not bound by orders entered in the New Zealand Liquidation.

86.     Application of section 365(e) is also necessary in this chapter 15 case. Under section 365(e), "*ipso facto* clauses—contract clauses that modify the rights of a debtor-

party due to the filing of a bankruptcy petition—are, as a general matter, unenforceable." *In re Lehman Bros. Holdings Inc.*, 553 B.R. 476, 491 (Bankr. S.D.N.Y. 2016). Specifically, section 365(e) provides: "an executory contract . . . of the debtor may not be terminated or modified, and any right or obligation under such contract . . . may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . the insolvency or financial condition of the debtor . . . ." 11 U.S.C. § 365(e)(1). In this case, application of section 365(e) is particularly important in light of the fact that PNAP, by its letter dated May 16, 2019, notified Cryptopia of its intent to terminate the MSA, citing Cryptopia's liquidation as the grounds for termination. As described above, the termination of the MSA could result in PNAP overwriting data owned by Cryptopia, which would be potentially catastrophic for Cryptopia's account holders and the administration of the New Zealand Liquidation, and would potentially leave the Liquidators unable to comply with their statutory duties to collect and distribute the property of the Company. *See* Ruscoe Decl. ¶ 21-23. Application of section 365(e) would prevent PNAP from terminating the MSA based on the MSA's *ipso facto* provision and, in turn, prevent devastating harm to the Debtor's estate.

**D.    Entrustment for Distribution to Cryptopia Account Holders Upon Recognition, Pursuant to Section 1521, Is Proper**

87.    The Foreign Representative respectfully requests that the Court entrust to the Foreign Representative the administration, realization and distribution of all assets of the Debtor within the territorial jurisdiction of the United States pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code. The Foreign Representative seeks such entrustment only for the purposes of preserving the Database and equipment located in the United States, thereby ensuring that he may reconcile Cryptopia's various digital asset holdings with the account holder

allocation information contained in the Database, in order to allow the New Zealand Liquidation to proceed.

88.     Upon recognition of a foreign proceeding as a foreign main proceeding, certain provisions of the Bankruptcy Code are made applicable to a chapter 15 case as a matter of right pursuant to section 1520 of the Bankruptcy Code.  In addition to these protections, a Foreign Representative may request additional "appropriate relief" pursuant to section 1521(a) of the Bankruptcy Code, including "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) [of the Bankruptcy Code]."  11 U.S.C. § 1521(a)(7).  Section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" to a foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors," provided that the interests of creditors and other interested entities are sufficiently protected.  11 U.S.C. §§ 1521(a), 1522(a); *see also Avanti*, 582 B.R. at 612 ("The discretion that is granted is exceedingly broad, since a court may grant any appropriate relief that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors.") (internal citations omitted).  Such relief may include:

(1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

(2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

(3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);

(4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

(5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;

(6) extending relief granted under section 1519(a); and

(7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

89.    The Court's authority to grant each form of relief requested pursuant to section 1521 is subject to the same two overlapping conditions because section 1521(a) provides that any relief granted pursuant to section 1521 must be "necessary to effectuate the purposes of [chapter 15] and to protect the assets of the debtor," and the Court must be satisfied that "the interests of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

90.    A determination of sufficient protection "requires a balancing of the respective parties' interests." *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citing *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012); *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 556–58 (E.D. Va. 2010); *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012)). Courts have also explained "sufficient protection" as:

embodying three basic principles: '[(i)] the just treatment of all holders of claims against the bankruptcy estate, [(ii)] the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and [(iii)] the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law.'

*In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005))).

91.     Here, both the three-factor *Atlas Shipping* test and the general balancing test favor granting the requested relief.

### 1.     *Just Treatment of All Holders of Claims Against or Interests in the Debtor's Property*

92.     The requirement to reasonably assure "just treatment of all holders of claims against or interests in the debtor's property" is satisfied where the foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding. *See, e.g.*, *In re Bd. of Dirs. of Telecom Arg., S.A.*, 528 F.3d 162, 170 (2d Cir. 2008) ("The 'just treatment' factor is satisfied upon a showing that the applicable law 'provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets among all of its creditors'") (citing *In re Treco*, 240 F.3d 148, 158 (2d Cir. 2001)); *In re Culmer*, 25 B.R. 621, 629 (Bankr. S.D.N.Y. 1992).

93.     Here, the New Zealand Liquidation will result in the distribution of the Debtor's assets as described in greater detail above and in the Ruscoe Declaration and the Heath Declaration.  In particular, the New Zealand Liquidation will result in the distribution of digital assets to Cryptopia's individual account holders.  This distribution, once accomplished, will be the result of a proceeding (the New Zealand Liquidation) in which all creditors were treated fairly and justly, in compliance with New Zealand law.

### 2.     *Protection of Claim Holders in the United States Against Prejudice and Inconvenience in the Processing of Claims in the New Zealand Liquidation*

94.     Creditors are required to submit claims to the Liquidators, who exercise a quasi-judicial power to adjudicate claims, both as to liability and amount.[28]  The Liquidators'

---

[28] Companies Act, §§ 304-10.

adjudications of claims, however, can be appealed to the New Zealand Court.[29]   Accordingly,
creditors in the United States will be required to process a claim in the New Zealand Liquidation,
but will not be inconvenienced or prejudiced thereby.   The claims adjudication process is
designed to be simple and inexpensive, as well as fair and transparent, and the New Zealand
Court supervises claims adjudications.[30]

### 3.    *Distribution of Proceeds Substantially in Accordance with the Bankruptcy Code*

95.    The third factor considers whether distribution of the Debtor's property
will substantially accord with the order of distribution available under the Bankruptcy Code.
The "substantially in accordance" factor does not require that the foreign distribution be identical
to United States bankruptcy law.   *In re Ionica*, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999)
("Section 304(c)(4) only requires that the foreign distribution scheme be 'substantially in
accordance' with United States bankruptcy law; it does not have to mirror the United States
distribution rules.") (citations omitted).

96.    Here, as described in more detail above, Cryptopia's assets will be
distributed *pari passu* in accordance with statutory priorities.   Additionally, the Companies Act
establishes the order of payments a liquidator must make when distributing proceeds of
realization of company assets.   Such ratable distributions and payments to creditors frequently
occurs in proceedings under the Bankruptcy Code and therefore are "substantially in accordance"
with United States bankruptcy law.

---

[29] *Id.* § 284.  Foreign currency claims are converted to New Zealand dollars at the rate prevailing at the date
and time of liquidation.  *Id.* § 306(2).

[30] *See id.* §§ 257,  284(1)(b); Regulation 16 Companies Act (1993), Liquidation Regulations (1994),
*available at* http://legislation.govt.nz/regulation/public/1994/0130/latest/DLM191677.html.

### 4.    The General Balancing Test Weighs in Favor of Granting Relief

97.    With respect to the general balancing test, Cryptopia and its creditors have a strong interest in the availability of a means to determine how property will be distributed in a collective proceeding because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding." *Atlas Shipping*, 404 B.R. at 737.  As discussed above, the New Zealand Liquidation is an appropriate mechanism to achieve this important goal.  The requested relief—entrustment of the Database—is necessary to effectively utilize this mechanism.   Without the data contained in the Database, the Liquidators cannot work out the amounts of digital assets held for individual account holders for purposes of equitably distributing those assets to their rightful owners.   On the other side of the ledger, PNAP will still receive the same treatment as other similarly situated creditors and will benefit from the protections available in the New Zealand Liquidation, so its interests are protected.   Accordingly, balancing the interests of the relevant parties strongly supports the conclusion that the relevant parties in interest are sufficiently protected.

98.    Finally, the relief requested here clearly furthers the goals and purposes of chapter 15 itself.  *See* 11 U.S.C. § 1501 (explaining that chapter 15's "objectives" include "cooperation between (A) courts of the United States . . . and (B) the courts and other competent authorities of foreign countries").  By ensuring that the Liquidators can effectively and fairly administer the New Zealand Liquidation, particularly with respect to distribution of account holders' digital assets, the relief requested "would assist in the efficient administration of this cross-border insolvency proceeding, and it would not harm the interests of the debtors or their creditors."  *In re Grant Forest Prods., Inc.*, 440 B.R. 616, 621 (Bankr. D. Del. 2010).

99. Accordingly, the Foreign Representative respectfully submits that entrustment of the Database to the Foreign Representative is necessary and appropriate.

## NOTICE

100. In accordance with Rule 2002(q) of the Bankruptcy Rules, the Foreign Representative has provided notice of the Motion for Recognition and the Emergency Motion for Provisional Relief to (i) the Debtor; (ii) the Office of the United States Trustee for Region 2; and (iii) the parties entitled to notice set forth in the *Motion Pursuant to Fed. R. Bankr. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* filed contemporaneously herewith. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

101. No previous request for the relief sought herein has been made by the Foreign Representative to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE the Foreign Representative respectfully requests entry of the Recognition

Order and the Provisional Order granting the relief requested therein and such other and further

relief as the Court may deem just and appropriate.

Dated:        May 24, 2019
              New York, New York

                                   */s/  Timothy Graulich*
                                   DAVIS POLK & WARDWELL LLP
                                   450 Lexington Ave
                                   New York, New York 10017
                                   Telephone: (212) 450-4000
                                   Facsimile: (212) 701-5800
                                   Timothy Graulich, Esq.
                                   James I. McClammy, Esq.
                                   Angela M. Libby, Esq.

                                   *Counsel to the Foreign Representative*