...

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Timothy Graulich, Esq.
James I. McClammy, Esq.
Angela M. Libby, Esq.

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X
                                      :
**In re**                             :   **Chapter 15**
                                      :
**CRYPTOPIA LIMITED (IN LIQUIDATION),** :   **Case No. 19-_____ (___)**
                                      :
   Debtor in a foreign proceeding.    :
                                      :
------------------------------------- X

**DECLARATION OF PAUL ROBERT HEATH IN SUPPORT OF MOTION FOR RECOGNITION AND EMERGENCY MOTION FOR PROVISIONAL RELIEF**

**Dated: May 2019**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

   I, Paul Robert Heath, of Auckland, New Zealand, Queen's Counsel, pursuant to Section 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

### INTRODUCTION

   1. I hold a practising certificate as a barrister in New Zealand. I am a member of Bankside Chambers in Auckland. I am an associate member of South Square, London, England. I am over the age of 18 and, except as otherwise indicated, all facts set forth in this declaration (this "**Declaration**") are based upon my personal knowledge. My opinion is based upon my experience and knowledge of the operations and financial condition of Cryptopia Ltd. ("**Cryptopia**") and my review of relevant documents or information supplied to me. In preparing

#92063237v11

Page 1

this Declaration, I reviewed (a) the Chapter 15 Petition (as defined below), (b) the Recognition Motion (as defined below), (c) the Emergency Motion (as defined below) and (d) relevant provisions of the Act (as defined below), (e) other provisions of New Zealand law as they relate to chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") and other aspects of U.S. bankruptcy law. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. Cryptopia was put into liquidation at 1:20 p.m. New Zealand Standard Time on May 14, 2019 as a result of a special resolution passed by shareholders. I have been asked by Buddle Findlay, the New Zealand solicitors for the Liquidators (as defined below), to provide expert evidence to assist the Court in determining the Recognition Motion and the Emergency Motion. David Ian Ruscoe and Malcom Russell Moore of Grant Thornton Limited, are the liquidators of Cryptopia (the "**Liquidators**"). Where two or more persons are appointed as liquidators of a company they must act jointly unless the special resolution of shareholders states that they may exercise their powers individually.[1] The special resolution appointing the liquidators does not authorize them to act individually. Acting jointly, the Liquidators appointed David Ian Ruscoe as the Company's Foreign Representative for this Chapter 15 proceeding.

3. I submit this Declaration in connection with the (a) *Chapter 15 Petition for Recognition of a Foreign Proceeding* (the "**Chapter 15 Petition**"), (b) *Motion for Recognition* (the "**Recognition Motion**") and (c) the *Emergency Motion for Provisional Relief* (the "**Emergency Motion**"), filed contemporaneously herewith. The purpose of this Declaration is to explain the regimes in place in New Zealand to deal with insolvent companies and to express my views on the way in which the liquidation regime applies to Cryptopia. I am independent of the

---

[1] Companies Act 1993, s 242

#92063237v11

parties. I have not had any dealings with Cryptopia prior to my engagement to provide expert evidence. This Declaration is made on the basis that my primary obligation is to assist the Court, and not to act as an advocate for the Liquidators.

4. This Declaration comprises matters that are statements of my view of New Zealand law or statements of fact. Where the matters stated in this Declaration are statements regarding New Zealand law, such statements represent my view of New Zealand law as a barrister admitted and authorized to practice in New Zealand. Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this Declaration that are statements of fact are not within my personal knowledge, they are derived from information provided to me by Buddle Findlay.

## PERSONAL BACKGROUND AND QUALIFICATIONS

5. I joined Bankside Chambers on April 9, 2018, following my retirement on April 6, 2018 as a Judge of the High Court of New Zealand. I specialize in strategic and general insolvency advice, arbitration and mediation.

6. I was admitted as a barrister and solicitor of the High Court of New Zealand on September 1, 1978. During my time in practice (excluding a period of 16 years during which I was a judicial officer), I specialized in commercial law, with particular emphasis on insolvency related issues. I was appointed Queen's Counsel in June 1998.

7. On March 29, 2002, I was appointed as a Judge of the High Court of New Zealand, the Court that has jurisdiction in insolvency cases in New Zealand. During my period as a High Court Judge, I gave a number of decisions arising out of international and domestic insolvency disputes. I refer to some of them in this Declaration. I indicate, in a footnote, any decision that was given by me. Between 2003 and 2017, I sat intermittently as an ad hoc Judge of the Court of Appeal of New Zealand.

8. During my time on the Bench, I was responsible for the preparation of the first draft of the *UNCITRAL Model Law on Cross-border Insolvency: The Judicial Perspective* (available at www.uncitral.org). This work was done during a period as Visiting Scholar at UNCITRAL in Vienna. An acknowledgement of the work undertaken in preparing the first draft is contained in the Preface to the publication. I attended the meeting of the UNCITRAL Working Group in Vienna in December 2010 to speak to the draft report.

9. Since 2005, I have been a faculty member of Judicial Colloquia on cross-border insolvency law. A judicial colloquium is held every two years under the auspices of INSOL International, UNCITRAL and the World Bank. In the period between 1999 and 2001, I was Head of Delegation for New Zealand at meetings of the UNCITRAL Working Group on Insolvency, held in Vienna and New York. I was elected as Vice Chairman of the Working Group at sessions held in 1999 and 2001 and chaired parts of each of those meetings in the absence of the elected Chairman.

10. From 1997 to 1999, I was engaged as a Consultant to the New Zealand Law Commission (an independent statutory body dealing with law reform) on commercial law issues. During that period, I acted as a *de facto* Commissioner, participating in all decisions of the Commission involving its reports. Specifically, I was responsible for oversight of the Commission's 1999 report, *Cross-border insolvency: Should New Zealand Adopt the UNCITRAL Model Law on Cross-border Insolvency?* (NZLC R 52, 1999). In 1999, I was appointed as a Commissioner of the New Zealand Law Commission and was responsible for oversight of two study papers prepared to assist the Ministry of Commerce and Ministry of Economic Development respectively, as part of a proposed insolvency law reform: *Priority Debt in the Distribution of Insolvent Estates: An Advisory Report to the Minister of Commerce* (NZLC SP 2

1999) and *Insolvency Law Reform: Promoting Trust and Confidence (An Advisory Report to the Ministry of Economic Development)* (NZLC SP 11 2001).

11. After I retired from the High Court in April 2018, I was engaged by the Asian Development Bank as a member of a faculty of former Judges for a colloquium in Myanmar in July 2018, designed to build capacity among Judges in that country to deal with new commercial laws, including an insolvency bill, in anticipation of the opening of local markets to foreign investment. In addition, I was invited by the World Bank and INSOL International to be a member of a faculty of former Judges to present at a Judicial Colloquium to be held in Delhi, India, during 2019, for members of the National Company Law Tribunal, in relation to India's Insolvency and Bankruptcy Code 2016.

12. In late 2018, I was appointed to chair a Working Group for INSOL International to explore the use of mediation in international restructuring and insolvency disputes. Earlier this month, I was appointed as Inaugural Chair of INSOL International's new Mediation Colloquium, the first of which will be held in Cape Town, South Africa, in March 2020.

13. I am also the co-consulting editor of the leading New Zealand text on insolvency law: *Heath & Whale on Insolvency* (LexisNexis).

## STATEMENTS OF NEW ZEALAND LAW AND PRACTICE

### A. The New Zealand Corporate Insolvency Regime

14. Cryptopia is a limited liability company incorporated under the Companies Act 1993 (the "**Act**"). Among other things, the Act provides a statutory framework for the incorporation, governance and management of New Zealand companies. It also establishes a number of regimes that are designed to deal with insolvency and adjustment of debt. What follows identifies the various insolvency regimes created by the Act.

15. There is no debtor in possession regime in New Zealand. Attempts to rescue a company in financial distress can be undertaken through a voluntary administration procedure,[2] compromises with creditors,[3] and schemes of arrangements.[4]

16. In cases where the company is insolvent and has no realistic prospects of continuing business, it is placed in liquidation.[5] A liquidation commences at the time a liquidator is appointed.[6] On the commencement of liquidation, a liquidator assumes responsibility for the management of the company. From that time, the company's directors are, for all practical purposes, *functus officio*.[7]

17. A company may be put into liquidation in one of four ways:[8]

(a) The first is where those shareholders entitled to vote and voting on the question pass a special resolution to put the company into liquidation.[9]

(b) The second is where the Board of Directors of the company resolve to put it into liquidation on the occurrence of an event specified in the company's Constitution.[10]

(c) The third is where the High Court makes an order that the company be placed in liquidation.[11]

---

[2] Companies Act 1993, s Part 15A, ss 239A-239AEW.
[3] Ibid, Part 14, ss 227-234.
[4] Ibid, Part 15, ss 235-239.
[5] Companies Act 1993, Part 16, ss 240-316B. Part 16 sets out the liquidation regime. It is also possible to put a solvent company into liquidation; most commonly where it is just and equitable to do so as a result of deadlock among those who have control of the company.
[6] Ibid, s 241(1).
[7] Ibid, s 248(1)(a) and (b).
[8] Although there are four ways in which a liquidator may be appointed, for the purposes of my evidence I shall be referring only to those appointed by shareholders and the High Court respectively.
[9] Companies Act 1993, s241(2)(a).
[10] Ibid, s 241(2)(b).
[11] Ibid, s 241(2)(c).

(d) The fourth is where a resolution to put the company into liquidation is passed by creditors at a "watershed meeting" held under s 239AT of the Act, as part of the voluntary administration regime.[12]

18. The liquidation of Cryptopia falls into the first of those categories. On the information I have seen, there is no doubt that Cryptopia is insolvent. The liquidation commenced at the time at which the resolution was made.[13]

19. The term "special resolution" is defined as one "approved by a majority of 75% or, if a higher majority is required by the Constitution, that higher majority, of the votes of those shareholders entitled to vote and voting on the question".[14] The special resolution is dated May 7, 2019, and was signed by three of the shareholders on May 9, 2019. The fourth shareholder did not sign until 1:20 p.m. on May 14, 2019, meaning that was the time and date on which the special resolution was passed, and the liquidation commenced.

20. The Act enables shareholders to pass a special resolution in writing, in lieu of a formal meeting of shareholders.[15] That was the form in which the special resolution to appoint the Liquidators was signed. Although the shareholders signed on different dates, as a matter of New Zealand law, that does not invalidate the resolution.[16]

21. The ability to pass a special resolution (in the form to which the Act refers) in lieu of a meeting of shareholders is subject to anything to the contrary in the Constitution of the company.[17]

22. Cryptopia's Constitution provides for Class A and Class B shares. Only

---

[12] Ibid, s 241(2)(d).
[13] Ibid, s 241A.
[14] Ibid, s 2(1), definition of "special resolution".
[15] Ibid, s 122(1).
[16] Ibid, s 122(3A).
[17] Companies Act 1993, s 122(2).

Class A shares have voting rights in respect of a resolution to put the company into liquidation.[18] All four Class A shareholders have signed the special resolution. There is nothing in the Constitution that otherwise modifies the requirements of the Act. Therefore, the special resolution complied with the requirements of the Act, and had the desired effect of putting Cryptopia into liquidation on May 14, 2019.

23.   The predecessor of the Act, the Companies Act 1955, provided for two types of voluntary liquidation. The first was called a creditor's voluntary winding up. The second was known as a member's voluntary winding up. The latter was designed to deal, primarily, with the liquidation of solvent companies. In addition, a liquidator could be appointed by the High Court. On the recommendation of the Law Commission, a deliberate decision was made when the Act was passed in 1993 to simplify and streamline liquidation processes so that the Act provided "one set of rules for all liquidations (voluntary or Court-ordered)" and required "minimal mandatory Court involvement in liquidations."[19] The need for the High Court's supervision of all forms of liquidation was confirmed by the Act.[20]

24.   Although a liquidation commenced by special resolution of shareholders is subject to Court supervision, there is no requirement that any document be filed in the High Court immediately after the special resolution is made. Rather, forthwith after being appointed, a liquidator must give public notice of his or her appointment, the date and time of the commencement of the liquidation and an address and telephone number to which inquiries may be directed by a creditor or shareholder.[21] Further, within 10 working days of being appointed,

---

[18] Constitution clause 2.1(a)(v).
[19] Company Law Reform and Restatement (NZLC R 9, 1989 at para 115).
[20] Companies Act 1993, s 284.
[21] Ibid, s 255(2)(a). Time starts under s 255(2) at the time a liquidator is appointed or is notified of his or her appointment. The notification provision would apply, generally, to a situation in which the liquidator is appointed by the Court, under s 241 (2)( c ). So, the time of appointment is the critical point in the case of a liquidation commenced by special resolution of shareholders.

the liquidator must deliver a notice of his or her appointment to the Registrar of Companies (the "**Registrar**").[22] The Registrar maintains a file that members of the public may search, which contains information that the Act requires to be lodged.[23] Generally, a liquidator (however appointed) will, after public notice has been given, convene meetings of creditors. Among other things, in a shareholder initiated liquidation, the creditors can consider whether to appoint a different liquidator in place of the one chosen by the shareholders.[24]

25. A liquidator appointed by special resolution of shareholders has the same powers as one appointed by the Court. One of the powers conferred is the right to "commence, continue, discontinue and defend legal proceedings."[25] That includes the ability to commence proceedings outside New Zealand. In my opinion, because the same powers are conferred on both Court and shareholder appointed liquidators, a person who is appointed by shareholders falls within the definition of "foreign representative" for the purposes of art 2(d) of the UNCITRAL Model Law on Cross-Border Insolvency (the "**Model Law**"). That definition has been adopted in New Zealand and, I believe, is contained in Chapter 15 of the Bankruptcy Code

26. I describe later why a liquidation commenced by special resolution of shareholders is subject to Court supervision, notwithstanding the absence of any requirement to notify the Court of his or her appointment immediately after the resolution is made.

**B.     Collective Insolvency Proceeding Subject to Court Supervision**

27. I am aware that the United States has enacted Chapter 15 of the Bankruptcy Code in order to give effect to the Model Law. I am also aware that some parts of the

---

[22] Ibid, s 255(2)(b).
[23] Ibid, s 360. The Registrar's obligation to register documents is set out in s 362, and the right to inspect is found in s 363.
[24] Ibid, s 243.
[25] Ibid, s 260(2) and Schedule 6, clause (a).

Model Law have been adapted to meet US conditions. Similarly, New Zealand has enacted the Insolvency (Cross-border) Act 2006 to give effect to the Model Law. It has also adapted some provisions to meet domestic needs.

28. I have been asked to give evidence as to whether the liquidation of Cryptopia, commenced by shareholder resolution, is a collective judicial or administrative proceeding in which the assets and affairs of a company are subject to the control or supervision of a Court, for the purposes of the definition of "foreign proceeding" in art 2(a) of the Model Law.[26] That provision to have been enacted without modification both in the United States and New Zealand. For reasons that follow, I am of opinion that a liquidation commenced by special resolution of shareholders is a collective judicial proceeding relating to insolvency in which, for the purpose of liquidation, the assets and affairs of the debtor are subject to supervision by the High Court of New Zealand.

29. In New Zealand, liquidation is a process designed to realize assets of a company so that they may be distributed to all creditors of the company, *pari passu,* in accordance with statutory priorities; not for the benefit of any one creditor. Available assets do not include either those which are subject to a charge[27] or held on trust for some other person. The priorities in which available assets are distributed are set out in Schedule 7 to the Act.[28] Without being

---

[26] The term "foreign proceeding" is defined in art 2(a) of Schedule 1 to the Insolvency (Cross-border) Act 2006 as follows:

Article 2. Definitions
...
(a) foreign proceeding means a collective judicial or administrative proceeding in a foreign State, including an interim proceeding, pursuant to a law relating to insolvency in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganisation or liquidation;

[27] Companies Act 1993, s 312(2), unless the charge is surrendered or redeemed under s 305.

[28] Ibid, ss 312 and 313. These provisions identify the basis on which preferential and other claims are to be met.

exhaustive, the types of claims for which priority is given include the costs and expenses of administration, employee claims (up to a specified sum) and particular classes of revenue debts.

30. In identifying the principal duty of a liquidator, the Act makes it clear that the proceeding is collective in nature. That duty requires a liquidator to take possession of, protect, collect, and distribute the assets, or the proceeds of the realization of the assets, of the company to its creditors in accordance with the Act.[29]

31. One of the requirements for a "foreign proceeding" to be recognized is that it is "judicial or administrative" in nature. I am aware that the a U.S. Bankruptcy Court has previously determined that an Australian voluntary winding up was a foreign proceeding because, among other things, it was administrative in nature: in *Re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009). The Australian legislation considered in *Betcorp* is not the same as that currently in force in New Zealand. In my view, the Act confers jurisdiction on the High Court to supervise the liquidation.[30] In exercising that supervisory jurisdiction, the High Court may (among other things) give directions in relation to any matter arising in connection with the liquidation,[31] confirm, reverse or modify any act or decision of the liquidator,[32] order an audit of the accounts of the liquidation,[33] review or fix the remuneration of a liquidator at a level which is reasonable in the circumstances[34] and declare whether or not a liquidator has been validly appointed or has validly assumed custody or control of property.[35] The Act makes it clear that the specific supervisory powers conferred on the High Court "are in addition to any other powers a court may exercise in its jurisdiction relating to liquidators under" the liquidation provisions of Part 16 of

---

[29] Ibid, s 253(a).
[30] Ibid, s 284.
[31] Ibid, s 284(1)(a).
[32] Ibid, s 284(1)(b).
[33] Ibid, s 284(1)(c).
[34] Ibid, s 284(1)(e).
[35] Ibid, s 284(1)(g).

the Act.[36] Also, the High Court, as a superior court of record with inherent jurisdiction, has long held supervisory jurisdiction over its officers, who include liquidators.

32. In *ANZ National Bank Ltd v Sheahan*,[37] the High Court considered whether liquidators appointed by shareholders of the company were to be treated as akin to officers of the Court. The High Court held that the New Zealand Parliament, when passing the Act, intended to put all liquidators on an equal footing. That being so, the High Court held that its ability to exercise both its supervisory jurisdiction under the Act and its inherent jurisdiction extended to all liquidators, however appointed. The Court added: "The fundamental point is that Parliament intended that [the High Court] exercise a general supervisory and, in appropriate cases involving urgency, summary jurisdiction over [all liquidators], in a manner akin to the Court's supervision of one of its 'officers'".[38]

33. When an application is made to the High Court to exercise supervisory powers, whether under the Act or pursuant to its inherent jurisdiction, all persons with an interest in the outcome will be ordered to be served. In some cases, counsel may be appointed to represent the interests of a particular class of creditor, or *amicus curiae* may be appointed. Almost invariably, applications to invoke the supervisory jurisdiction of the High Court will be held in open court. Because no court file is opened when a liquidator is appointed by special resolution of shareholders, a separate court file will be opened in respect of each application that comes before the court, unless the court makes a direction that all applications be consolidated within one court file.

---

[36] Ibid, s 284(2).
[37] *ANZ National Bank Ltd v. Sheahan* [2013] 1 NZLR 674 (HC) (Heath J). Also reported as *Re Ex Ced Foods (Formerly Cedenco Foods) (in liq); ANZ National v Sheahan* [2013] BCC 321.
[38] Ibid, at para [137]. The Court added that that approach was consistent with the ability of all liquidators to exercise the same powers under the Act.

34. It is not necessary for one judge to deal with all applications under the supervisory jurisdiction of the High Court in respect of a single liquidation. However, in a complex case, application can be made to the Chief High Court Judge to have a Commercial Panel Judge appointed to manage all applications filed in respect of the single liquidation.[39] Such an application has been made by the Liquidators. That application has not yet been determined by the Chief High Court Judge.

C.    **Powers and Duties of a Liquidator**

35. In a case where a creditor or other qualifying person seeks appointment of a liquidator to a company, that person will nominate someone to be appointed by the Court. Provided the Court is satisfied as to the nominee's qualifications and character, it will typically appoint that person without further ado.[40] By contrast, a person will be appointed as liquidator by shareholders, when the liquidation is commenced by shareholder resolution. The protection for creditors lies in their ability to pass a resolution to appoint a replacement liquidator at a meeting of creditors.[41]

36. A liquidator of a company has plenary power to take possession of and realize all property of the company, whether situated in New Zealand or elsewhere. Irrespective of the mode by which a liquidator is appointed, his or her principal duty is "to take possession of, protect, realize, and distribute the assets, or the proceeds of the realization of the assets, of the company to its creditors in accordance with" the statutory priorities fixed by the Act.[42] To comply

---

[39] The circumstances in which an assignment of a Panel Judge may be made are set out in rr 29.1-29.6 of the High Court Rules. Clause S(1)(e) of the Senior Courts (High Court Commercial Panel) Order 2017 includes, as a type of commercial proceeding to which a Panel Judge might be assigned, one that involves "corporate insolvency where the public interest or complexity warrants determination by a panel Judge."
[40] Generally, see *Re Roslea Path Ltd (in liq)* [2013] 1 NZLR 207 (HC) at paras [106]-[109], (Heath and Venning JJ), in the context of an application to fix liquidators' remuneration.
[41] Companies Act 1993, s 243(6).
[42] Ibid, s 253(a) and Schedule 7 (as to statutory priorities).

with that principal duty, a liquidator possesses all powers "necessary to carry out the functions and duties of a liquidator" or otherwise expressly "conferred on a liquidator" by the Act.[43] As previously mentioned, those powers include the ability to commence Court proceedings, inside or outside of New Zealand.[44]

37. The term "assets" is not defined by the Act, save to the extent that it does not include assets subject to a charge.[45] However, the term "assets" is regarded as synonymous with the word "property". That term is broadly defined by s 2(1) of the Act as meaning "property of every kind whether tangible or intangible, real or personal, corporeal or incorporeal, and includes rights, interests, and claims of every kind in relation to property however they arise." That includes property situated outside New Zealand.

38. To ensure a liquidator can locate and take possession of assets of a company, he or she is given statutory powers to obtain documents belonging to the company and information from both insiders and third parties. In addition, a liquidators may examine on oath any specified class of person, including one "having knowledge of the affairs of the company."[46] If a person fails to comply with a requirement of a liquidator to provide documents or information, the High Court may make appropriate orders to compel compliance.[47]

39. Once a liquidator has gathered in all assets of the company, he or she is obliged to distribute them in accordance with the statutory priorities to which I have referred. By the time of distribution, creditors will have lodged proofs of claim with the liquidator to establish

---

[43] Ibid, s 260(1). Particular powers are set out in Schedule 6.
[44] Ibid, Schedule 6, clause (a).
[45] Ibid, s 312(2).
[46] Ibid, s 261(2)(e) and (3) and 265. Generally, see the discussion of the principles surrounding invocation of s 261 of the Companies Act 1993 in *Petterson v Gothard* [2012] NZHC 666 (Heath J) at paras [9]–[13], in the context of requests for information from receivers of a company in liquidation.
[47] Ibid, s 266.

their respective debts.[48] The liquidator decides the amount for which each proof of claim should be admitted;[49] and a creditor has the right to apply to the High Court for leave to review that finding.[50]

40.  In getting in all assets of a company, a liquidator (whether appointed by the Court or shareholders) is entitled to bring claims to claw-back amounts paid to creditors of the company in preference to those who claim in the liquidation. For example, such claims may be brought in respect of insolvent voidable transactions,[51] transactions at an undervalue[52] and voidable securities and charges.[53] Contested claims in respect of antecedent transactions of that type will generally be determined by the High Court.

41.  I have not seen the hosting arrangement between Phoenix NAP LLC ("**PNAP**") and Cryptopia. I do not know by what law it is governed. As a result, I offer no opinion about whether the SQL (i.e. Structured Query Language) database should be characterized as a document or property (meaning an asset) belonging to Cryptopia. I explain the basis on which the liquidator would be entitled to the database, under New Zealand law, on alternative bases.

42.  The Liquidators have full powers to take possession of all property of the company (wherever situated) and to sell or otherwise dispose of it so that they may distribute it (or the proceeds of its sale) among creditors in accordance with statutory priorities.[54] For that reason, if the database were characterized as an asset of the company the Liquidators are legally entitled to take possession of it. Their statutory duty to "protect" assets[55] of the company would

---

[48]  Ibid, ss 303-313.
[49]  Ibid, s 304(3).
[50]  Ibid, s 284(1)(b).
[51]  Ibid, s 292.
[52]  Ibid, s 297.
[53]  Ibid, s 299.
[54]  Ibid, s 253(a) and Schedule 6(g).
[55]  Ibid, s 253(a).

enable them, under New Zealand law, to seek interim injunctive relief if it were necessary to prevent a third party from disposing of assets that it is seriously arguable ought to be realized for the benefit of creditors of the company in liquidation.[56]

43. If the database were characterized as a "document of the company," which the Liquidators need in order to determine whether the underlying crypto-currency is an asset of the company or held in trust for some other person, the Liquidators would have power to compel the appropriate officer or employee of PNAP to deliver it to them.[57] Alternatively, if the database were not regarded as a document belonging to the company, the Liquidators could require such a person to provide them with information about the database, either by a means of communication determined by the Liquidators or through examination on oath.[58] In either case, in the event of default, the Liquidators could apply to the High Court for a coercive order to ensure the person concerned complied with the Liquidators' requirements.[59]

## D. Assets of the Company/Trust Assets

44. It is possible that Cryptopia may own some assets that are available for distribution to its creditors and others that are held on trust for beneficiaries pursuant to an express or implied trust. In such circumstances, under New Zealand law, a liquidator must take possession of all assets, realize them and apply the proceeds to meet claims of creditors or beneficiaries, as the case may be. If a company holds assets in trust, a liquidator, in his or her capacity as the person controlling the corporate trustee, must realize and distribute proceeds in accordance with the terms of the relevant trust.

---

[56] For the test applied on an interim injunction application, see *Klissers Farmhouse Bakeries Ltd v Harvest Bakeries Ltd* [1985] 2 NZLR 129 (CA) at 142.
[57] Companies Act 1993, s 261(1).
[58] Ibid, s 261(2)(e) and (3)(b) and (c).
[59] Ibid, s 266(1).

45. In cases where the company in liquidation has no assets in respect of which it has both legal and beneficial title, the only asset that may be used to meet creditors' claims is the right to an indemnity out of trust assets available to a trustee.[60] This right enables a liquidator to meet trust claims out of trust assets. It remains an open question in New Zealand as to whether the right to indemnity may, legitimately, be excluded by a trust instrument. To my knowledge, there is no evidence that Cryptopia held assets pursuant to any trust instrument that might affect the existence of the right to indemnity.

46. If, as a matter of applicable law, the underlying assets (*e.g.* Bitcoin) are held in the name of Cryptopia on behalf of an ascertained person, the Liquidators have a duty to get in those assets, for which the company is the legal owner, but to realize and distribute them for the benefit of the beneficiaries of the trust, rather than the creditors of the company.

47. If Cryptopia has incurred any liability in respect of a particular trust fund, that liability can be met out of realizations from the sale of those trust assets. That is because the company in liquidation, *qua* trustee, is entitled to indemnity from the trust fund to meet such claims. Similarly, if fees and expenses are incurred by the Liquidators in realizing and distributing particular trust assets, they too will be payable out of the relevant trust fund.

48. If Cryptopia has incurred non-trust related liabilities, the right to indemnity will not be available to meet those claims.

Dated at Auckland this 24th day of May 2019

Paul Robert Heath

---

[60] Trustee Act 1956, s 38(2). Generally, see *Levin v Ikiua* [2010] 1 NZLR 400 (HC) (Heath J); upheld on appeal, *Levin v Ikiua* [2011] 1 NZLR 678 (CA).